Raymond S. **BERRY**

v.

**UNITED STATES** of America.

Civ. A. No. 44221.

United States District Court
E. D. Pennsylvania.
July 16, 1968.

---

Edward F. Mannino, Philadelphia, Pa., court-appointed, for petitioner.

Arlen Specter, Dist. Atty., Robert S. Blank, Asst. Dist. Atty., Philadelphia, Pa., for the United States.

## OPINION

JOSEPH S. LORD, III, District Judge.

Petitioner seeks relief under 28 U.S.C. § 2255.[1] I appointed counsel and held a plenary hearing, as a result of which I find the following facts:

On March 13, 1962, petitioner was arrested and charged with the illegal sale of narcotics. He was arraigned before the United States Commissioner, and later before Judge John W. Lord, Jr., when he entered a plea of not guilty. On September 4, 1962, Martin Heller, Esquire, was appointed to represent Berry. Between September 4 and September 11, Mr. Heller visited the petitioner in prison and spoke to him at length for about an hour, asking him

questions and receiving relevant answers. Mr. Heller also examined the Government's files and evidence.

On September 11, Berry changed his plea before me to guilty. He was sentenced on October 19 to fifteen years imprisonment on the narcotics charge and to three years for violation of probation, the sentences to run consecutively. From the time of his arrest until sentence, Berry was incarcerated.

Petitioner had been a narcotics addict for twenty-five years and was under the influence of narcotics at the time of his arrest. However, from March until September, 1962, he had had no narcotics.

Petitioner's first claim is that he was incompetent to enter a plea. He asserts that evidence of his twenty-five year addiction, together with his testimony that he was suffering from withdrawal symptoms "clean up until around October or November" shifts to the Government the burden of proving petitioner's competence. He concludes that since the Government has produced no evidence to rebut petitioner's testimony of incompetence, relief must be granted. I do not agree.

It is true that in a criminal prosecution, "when some evidence of mental disorder is introduced, the prevailing rule in most jurisdictions is that sanity, like any other fact, must be proved as a part of the prosecution's case beyond a reasonable doubt." United States v. Currens, 290 F.2d 751, 761 (C.A.3, 1961). This rule, however, stems from the fact that guilt cannot attach in the absence of *mens rea,* and since mental capacity is a necessary element of the crime, it, like all other necessary elements, must be proved when it emerges as an issue. Ibid. Where, however, guilt has already been established by verdict or plea, the only avenue of attack other than appeal is by a collateral

---

1. I have a letter from petitioner's counsel requesting that I consider the prayer for relief, in the alternative, as a motion to withdraw the guilty plea under F.R. Crim.P. 32(d). In my view, for the reasons hereafter stated, it is immaterial whether relief is sought under § 2255 or Rule 32(d) or both. Cf. United States v. Del Piano, 386 F.2d 436, 437 (C.A.3, 1968).

proceeding. In such proceeding, "the only possible way to determine the question of competence to stand trial * * * is by retrospective hearing." Hansford v. United States, 124 U.S.App.D.C. 387, 365 F.2d 920 (1966), fn. 16, at page 926. And the burden of proof of incompetence is on the movant. Bishop v. United States, 96 U.S.App.D.C. 117, 223 F.2d 582 (1955); Heard v. United States, 263 F.Supp. 613, 616 (D.C.1967).

■ The mere fact that Berry's testimony was uncontradicted does not require its acceptance, for credibility is for the trier of the facts. Hawk v. Olsen, 326 U.S. 271, 279, 66 S.Ct. 116, 90 L.Ed. 61 (1945); Tyler v. Beto, 391 F.2d 993, 995 (C.A.5, 1968). I find that petitioner was not suffering from withdrawal symptoms at the time of his plea and I reject his testimony to the contrary.

■ Although as an addict he was familiar with the manifestations of withdrawal symptoms, he had neither requested nor received any medical treatment in prison. Indeed, while petitioner testified to withdrawal symptoms at the time of his arrest and alleged interrogation (N.T. 9, 12), his only testimony relating to the time of the guilty plea was the naked assertion that he was "suffering from withdrawals clean up until around October or November" (N. T. 47). He tells us nothing of the effect of these alleged "withdrawals". The test of incompetence in this situation is whether defendant had the ability to consult with his lawyer with a reasonable degree of rational understanding and whether he had a rational as well as factual understanding of the proceedings against him. Dusky v. United States, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960). Berry nowhere said he was unable to consult with counsel. In fact, the evidence is to the contrary. He did meet with counsel; he discussed with him his alleged confession; he gave him the names of witnesses; he discussed the possibility of a jury trial; and he gave relevant answers to counsel's questions.

Furthermore, petitioner had been away from narcotics for six months. "Investigations conducted at the hospital [Lexington] have revealed that addicts do not regain *physiological* normalcy for some six months after withdrawal from drugs." WINICK, NARCOTICS ADDICTION AND ITS TREATMENT, 22 Law and Contemp. Prob. 9, 24 (1957) (Emphasis added). See also, PRESIDENT'S CRIME COMMISSION TASK FORCE REPORT ON NARCOTICS AND DRUG ADDICTION, 157 and n. 103 (1967). Berry had had six months to recover.

Finally, there is no evidence anywhere in this record that Berry told his lawyer or anyone else that he was suffering from withdrawal symptoms at the time of his plea. He did not even mention it at the time of sentence, over one month after the plea. I find that petitioner was competent to enter his guilty plea on September 11, 1962.

■ I find further, that although petitioner claims to have signed a confession which in part induced his plea, there was in fact no confession signed, either voluntary or involuntary. I must therefore reject petitioner's claim that his plea was the result of an involuntary confession.

Petitioner next contends that his appointed counsel was incompetent. I cannot agree.

### I. Failure to Request a Psychiatric Examination

Mr. Heller visited Berry and spoke with him for approximately one hour. He questioned him and at no time did he receive an answer that was not both relevant and responsive. There is no evidence that Berry complained at that time or at any other time of withdrawal symptoms, although he was obviously familiar with their manifestations. Counsel had no reason to suspect that a psychiatric examination was indicated.

The cases relied upon by petitioner are clearly distinguishable from this one. In Brooks v. State of Texas, 381 F.2d 619, 622 (C.A.5, 1967), the court pointed out that "* * * thorough and timely interview with his client would have disclosed commitments to at least three different mental institutions during 1962 and 1963 and two attempts to commit suicide. Instead, counsel waited until the Friday before the Monday on which the case was set for trial to interview Brooks for between 15 and 25 minutes." In Owsley v. Peyton, 368 F.2d 1002, 1003 (C.A.4, 1966), the "attorney must have been aware that proof of the uncertainty [as to defendant's mental condition] was at hand." And in Kibert v. Peyton, 383 F.2d 566, 568 (C.A.4, 1967), the "attorney prior to trial had serious doubts as to Kibert's mental condition. * * *"

None of these factors obtain here. Mr. Heller interviewed petitioner at length. He had no doubt of and no reason to doubt petitioner's mental competence. He did know, of course, of petitioner's addiction, but when he saw Berry there was nothing to indicate that the addiction had impaired his competence to stand trial or to enter a plea.

▮ Nor was there anything other than addiction on which to base a defense to the charge itself, and this is no defense. In United States v. Freeman, 357 F.2d 606 (C.A.2, 1966), Judge Kaufman said, at page 625:

"Nor may narcotics addiction without more be the sole evidence of abnormality under the American Law Institute test. * * * In light of the severe penalties imposed by Congress for the possession and sale of narcotics, it would be unwise at this stage of medical knowledge, for a court to conclude that those addicted to narcotics should be, for that reason alone, immune from criminal sanctions."

▮ In sum, while petitioner's addiction was a fact, standing alone, as it did,

it was not an exculpatory fact. This, together with petitioner's apparent normalcy at the time of the interview and plea, did not raise that "reasonable doubt as to his sanity", Kibert v. Peyton, 383 F.2d 566 (C.A.4, 1967), that would compel a request for a mental examination.

II. Failure to Locate Witnesses

▮ Apparently petitioner gave Mr. Heller the names of three witnesses. They would have testified only as to his addiction. This, even if admissible, would have added nothing to Berry's defense for the reasons stated above.

III. Failure to Investigate Possible Entrapment Defense [2]

▮ The short answer to this is that petitioner now steadfastly maintains he has no recollection of and does not know whether he committed the crime with which he was charged. Such a position is inconsistent with the defense of entrapment, since the latter "necessarily assumes that the act charged was committed." Hamilton v. United States, 221 F.2d 611, 614 (C.A.5, 1955).

▮ In addition to what I have said above, Mr. Heller reviewed the Government's files and obtained the dismissal of eight other counts. He could, in my judgment, have done no more. Petitioner had competent representation throughout.

▮ Petitioner argues in a footnote that the failure of the sentencing judge to order a psychiatric examination, sua sponte, offended due process, citing Pate v. Robinson, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966). Petitioner relies almost entirely for his position on his known drug addiction. I do not read Robinson to require a competency hearing under these circumstances.

In Howell v. United States, 282 F. Supp. 246, (N.D.Ill.1968), the court said, at page 248:

"* * * The question which Robinson and Dusky require to be answered

2. Interestingly enough, petitioner's brief, page 14, refers to incompetence as "the

only possible defense available to the accused."

here is whether sufficient evidence of incompetency was before the trial judge so that his failure to conduct a competency hearing constituted an abuse of his discretion in the conduct of the proceedings and a denial of petitioner's constitutional right to a fair trial."

Heard v. United States, 263 F.Supp. 613 (D.C.1967), was a section 2255 proceeding in which petitioner alleged incompetence. The court denied relief, saying, at pages 616 and 617–18:

"In the final analysis, petitioner's reliance rests exclusively on the bare fact of his recognized addiction to narcotics over a long period of years and certain nebulous allegations that his behavior at trial evidenced incompetency.

\* \* \* \* \* \*

"This court holds that insufficient evidence of mental incompetency existed at trial to raise a *bona fide* doubt requiring the trial court judge *sua sponte* to order a hearing."

So here, at the time of the plea, there was little more than the bare fact of known addiction before the court. There was at that time no assertion of withdrawal symptoms. Petitioner seizes on his guilty plea to all nine counts of the indictment, when, as a matter of fact, eight were to be dismissed. I consider this now, as I did at the time of arraignment, to be a mere inadvertence and not at all suggestive of mental incompetence. In short, the evidence at arraignment was insufficient to raise that *bona fide* doubt of petitioner's competence as to require the trial judge *sua sponte* to order a hearing.

 Next, petitioner contends that he was incapable of formulating criminal intent at the time of his alleged offense because he was then under the influence of heroin. He alleges that he did not know whether he made a sale of narcotics or not. Mr. Heller's notes of his interview with Berry in prison reflect a detailed description of the transaction of September 30, 1961, a description that could only have come from petitioner and which reveals a complete understanding of the events. I must reject petitioner's testimony to the contrary.

 In any event, a lack of criminal responsibility may not be raised in a section 2255 proceeding, Hahn v. United States, 178 F.2d 11 (C.A.10, 1949), at least "unless the plea[s] of guilty were first found invalid," Bell v. United States, 265 F.Supp. 311 (N.D.Miss., 1966). I have here found valid the plea of guilty.

Petitioner next alleges, and correctly so, that he was not advised before his plea that he would not be eligible for parole. He argues from this that his plea was therefore not entered knowingly and intelligently because it was made without an understanding of its consequences.

 The sentencing in this case was before the 1966 Amendment to F.R.Crim. P. 11, which added, *inter alia*, the requirement of a determination that the plea was made with understanding of "the consequences of the plea." The addition of these words, however, was merely a restatement of already existing law. See NOTES OF ADVISORY COMMITTEE ON RULES, 18 U.S.C.A. ff. Rule 11, and cf. United States v. Del Piano, 386 F.2d 436, 437 (C.A.3, 1967). Hence, the failure to advise a defendant in 1962 of his ineligibility for parole is equatable with a violation of Rule 11 after 1966.

As to the effect of such violation, courts have reached divergent results. Compare Long v. United States, 290 F.2d 606 (C.A.9, 1961), and Munich v. United States, 337 F.2d 356 (C.A.9, 1964), with Heiden v. United States, 353 F.2d 53 (C.A.9, 1965). This Circuit follows the rule that failure to comply with Rule 11 does not *per se* vitiate the plea and sentence.

In United States v. Del Piano, 386 F.2d 436 (C.A.3, 1967), cert. den., 392 U.S. 936, 88 S.Ct. 2306, 20 L.Ed.2d 1395 (1968), the court said, at page 437:

"The District Court rejected appellant's allegations that promises as to

his sentence had been made and that he was not aware of the nature of the charges or the possible consequences of pleading guilty. \* \* \* "

After concluding that the district judge's findings were amply supported by the record, the court continued (pp. 437–438):

"There remains for our consideration the consequences, if any, which should flow from the non-compliance with Rule 11.

"The courts are divided as to the consequences which should flow from non-compliance. Most have held that this does not per se require a vacation of sentence and plea. The inquiry is whether the plea was in fact voluntary. Such was the view adopted by the District Court in United States v. Miller, 243 F.Supp. 61 (E.D.Pa.1965), and aff'd by this Court in a per curiam opinion, 356 F.2d 515 (3rd Cir. 1966). Appellant's counsel urges us to adopt the view that failure to comply with the rule as then formulated automatically required the District Court here to strike the plea. The answer is that this panel is not free to overrule the legal approach approved by this Court in United States v. Miller, above.

■■ Since failure to comply with Rule 11 does not automatically vitiate the plea, the inquiry here must be whether defendant was prejudiced by that failure. I conclude that he was not.

There is no doubt that defendant knew he was subject to a maximum penalty of forty years imprisonment. Petitioner may have believed that he would be eligible for parole, but he knew that parole would not be available before service of one-third of the sentence (N.T. 51). Petitioner, of course, had no right or basis to assume that less than the maximum would be imposed. And under such a sentence, parole would not have been available until he had served thirteen and one-half years imprisonment. Under the

sentence imposed—fifteen years—with mandatory good time, petitioner will be released after ten years and twenty-six days.[3]

We are not here faced with the difficult and possibly elusive task of "searching at a later date for the truth as to defendant's then state of mind." Heiden v. United States, supra. Here, an indisputable mathematical calculation demonstrates that petitioner will serve over three years less time than he would have served if the maximum sentence, to which he knew he was subject, had been imposed and his belief in his eligibility for parole had been correct. I conclude that the failure to advise petitioner of his ineligibility was in no way prejudicial to petitioner. The conclusion I have reached makes it unnecessary to decide whether ineligibility for parole is "a consequence of the plea." Compare Munich v. United States, supra, with Trujillo v. United States, 377 F.2d 266 (C.A.5, 1967) and Smith v. United States, 116 U.S.App.D.C. 404, 324 F.2d 436 (1963), cert. den. 376 U.S. 957, 84 S.Ct. 978, 11 L.Ed.2d 975 (1964).

Finally, petitioner contends that his plea was induced (1) by threats made by federal agents; (2) by his counsel's representations that he would receive forty years and possibly life if he did not plead guilty, but that on a guilty plea he would receive medical treatment and no more than ten years.

At the arraignment, this occurred:

"THE COURT: Are you changing your plea to guilty because of any promises that have been made to you?

"THE DEFENDANT: No, sir; I have been made no promises.

"THE COURT: You what?

"THE DEFENDANT: No kind of promises.

"THE COURT: Either by the Court or by the United States Attorney or by your own attorney?

"THE DEFENDANT: No. sir.

3. We do not, of course, consider the three-year sentence for probation violation, for on that Berry is eligible for parole.

\* \* \* \* \* \*

"THE COURT: Are you changing your plea to guilty on COUNT NO. 4 of this indictment because you did, in fact, commit the crime that is charged in that count?

"THE DEFENDANT: Yes, sir."

I reject petitioner's present testimony to the contrary.

The court is indebted to Edward F. Mannino, Esquire, who, at the court's request, gratuitously represented petitioner in the highest tradition of the Bar.

The petition to vacate the sentence and withdraw the guilty plea will be denied. There is probable cause for appeal.

It is so ordered.