**Raymond S. BERRY, Appellant,**

v.

**UNITED STATES of America.**

**No. 17467.**

United States Court of Appeals Third Circuit.

Argued March 24, 1969.

Decided May 28, 1969.

Edward Mannino, Dilworth, Paxson, Kalish, Kohn & Levy, Philadelphia, Pa., for appellant.

Jerome R. Richter, Asst. U. S. Atty., Philadelphia, Pa. (Drew J. T. O'Keefe, U. S. Atty., Philadelphia, Pa., on the brief), for appellee.

Before SEITZ, ALDISERT and STAHL, Circuit Judges.

OPINION OF THE COURT

ALDISERT, Circuit Judge.

The appellant pleaded guilty to the illegal sale of narcotic drugs in violation of 21 U.S.C.A. § 174 and was sentenced to fifteen years imprisonment. Under the provisions of Section 7237 of Title 26, he was not eligible for parole because of previous violations of the narcotics laws.[1] He was not advised of this ineli-

---

1. 26 U.S.C.A. § 7237 provides that if it is the offender's second or subsequent offense, "the imposition or execution of sentence shall not be suspended, probation shall not be granted and in the case of a violation of a law relating to narcotic

drugs, Section 4202 of Title 18, United States Code * * * shall not apply."

18 U.S.C.A. § 4202 states: "A Federal prisoner, other than a juvenile delinquent * * * wherever confined and serving a definite term or terms of over

gibility prior to entering the plea. This case requires us to decide whether the failure to so advise him vitiates the plea.

The reception of the plea took place in 1962, before the 1966 amendments to Federal Criminal Rule 11 which added the requirement that a guilty plea be entered with an understanding of its "consequences".[2] The court below correctly concluded that the addition of this requirement was merely an explicit restatement of existing law and practice and that "the failure to advise a defendant in 1962 of his ineligibility for parole is equatable with a violation of Rule 11 after 1966." [3]

Following an evidentiary hearing,[4] the district court determined that the defendant had not been advised of this ineligibility and "may have believed that he would be eligible for parole." Nevertheless, the court concluded that no prejudice had been sustained by this omission and denied relief.[5]

After oral argument of the appeal before this Court, the Supreme Court held in McCarthy v. United States, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (April 2, 1969), that non-compliance with Rule 11 in accepting a guilty plea vitiates the plea and necessitates the opportunity to plead anew—thus adopting the "automatic prejudice" rule of Heiden v. United States, 353 F.2d 53 (9 Cir. 1965). In so doing, the Supreme Court rejected this Court's holdings in Miller v. United States, 356 F.2d 515 (3 Cir. 1966) and United States v. DelPiano, 386 F.2d 436 (3 Cir. 1967) that non-compliance with Rule 11 "does not per se require a vacation of sentence and plea. The inquiry is whether the plea was in fact voluntary." 386 F.2d at 437.[6] It was the teaching of DelPiano and Miller which led the district court to conclude that no relief could be granted without a showing of actual prejudice.

But we may not apply the McCarthy rule of "automatic prejudice" to the plea

---

[one year] whose record shows that he has observed the rules of the institution in which he is confined, may be released on parole after serving one-third of such term or terms or after serving fifteen years of a life sentence."

2. The amendments to Rule 11, effective July 15, 1966, appear in italics as follows: "A defendant may plead not guilty, guilty, or with the consent of the court, *nolo contendere*. The court may refuse to accept a plea of guilty, and shall not accept such a plea *or a plea of nolo contendere* without first *addressing the defendant personally and* determining that the plea is made voluntarily with the understanding of the nature of the charge and the *consequences of the plea*. If a defendant refuses to plead or if the court refuses to accept a plea of guilty or if a defendant corporation fails to appear, the court shall enter a plea of not guilty. *The court shall not enter a judgment upon a plea of guilty unless it is satisfied that there is a factual basis for the plea.*"

3. See the Advisory Committee's Notes, 8 Moore's Federal Practice § 11.01 and 1 Wright, Federal Practice and Procedure § 173.

4. The matter came before the district court as a petition seeking relief alternatively

under 28 U.S.C.A. § 2255 or Federal Criminal Rule 32(d) as a motion to withdraw a plea of guilty.

5. The court's conclusion that no prejudice had been sustained was reasoned as follows: "There is no doubt that defendant knew he was subject to a maximum penalty of forty years imprisonment. Petitioner may have believed he would be eligible for parole, but he knew that parole would not be available before service of one-third of the sentence (N.T. 51). Petitioner, of course, had no right or basis to assume that less than the maximum would be imposed. And under such a sentence, parole would not have been available until he had served thirteen and one-half years imprisonment. Under the sentence imposed—fifteen years—with mandatory good time, petitioner will be released after ten years and twenty-six days." Berry v. United States, 286 F. Supp. 816, 822 (E.D.Pa.1968).

6. Similar rulings had been made by other circuits in Lane v. United States, 373 F. 2d 570 (5 Cir. 1967); United States v. Kincaid, 362 F.2d 939 (4 Cir. 1966); Bartlett v. United States, 354 F.2d 745 (8 Cir. 1966).

in this case which was entered on September 11, 1962. In Halliday v. United States, 394 U.S. 831, 89 S.Ct. 1498, 23 L.Ed.2d 16 (May 5, 1969), the Court stated: "[W]e decline to apply McCarthy retroactively. We hold that only those defendants whose guilty pleas were accepted after April 2, 1969, are entitled to plead anew if their plea was accepted without full compliance with Rule 11." [7]

Accordingly, it becomes necessary to examine the circumstances surrounding the entry of the plea from the viewpoint of pre-*McCarthy* standards. In so doing, we have concluded that the appellant's plea was not entered with a proper understanding of its consequences and must therefore be vacated. We reach this conclusion because we regard the test of prejudice applied by the district court as improper.

The court below concluded from its evidentiary hearing that at the time the appellant entered his plea, he was unaware that he would be ineligible for parole.[8] The court reasoned, however, that this lack of knowledge was not prejudicial because the actual sentence imposed, even without the right to parole, was less than one-third of the maximum sentence which could have been given. Since federal prisoners must serve one-third of their sentence to be eligible for parole, the court concluded that no actual prejudice was incurred.

The court's reasoning is based on a false conception of "prejudice." Whether prejudice resulted from the entry of the guilty plea is not measured by the severity or leniency of the sentence imposed; prejudice inheres when an accused pleads guilty, thus convicting himself of a criminal offense, without understanding the significance or consequences of his action. Accordingly, our task is to determine whether it is pos-

7. The Court declared:
   "The rule we adopted in McCarthy has two purposes: (1) to insure that every defendant who pleads guilty is afforded Rule 11's procedural safeguards, which are designed to facilitate the determination of the voluntariness of his plea; (2) to provide a complete record at the time the plea is entered of the factors relevant to this determination, thereby enabling a more expeditious disposition of a post-conviction attack on the plea. Unquestionably, strict compliance with Rule 11 enhances the reliability of the voluntariness determination, and we have retroactively applied constitutionally grounded rules of criminal procedure designed to correct 'serious flaws in the fact-finding process at trial.' Stovall v. Denno, supra, 388 U.S. at 298, 87 S.Ct. 1970. [18 L.Ed.2d 1199.] However, a defendant whose plea has been accepted without full compliance with Rule 11 may still resort to appropriate post-conviction remedies to attack his plea's voluntariness. Thus, if his plea was accepted prior to our decision in McCarthy, he is not without a remedy to correct constitutional defects in his conviction. Cf. Johnson v. New Jersey, supra, 384 U.S., at 730, 86 S.Ct. at 1779, [16 L. Ed.2d 882]. And as we pointed out in Stovall, the extent to which a 'condemned practice infects the integrity of the truth-determining process * * *

   must be * * * weighed against the prior justified reliance upon the old standard and the impact of retroactivity upon the administration of justice.' Stovall v. Denno, supra, 388 U.S. at 298, 87 S.Ct. at 1970. In McCarthy we noted that the practice we were requiring had been previously followed by only one Circuit; that over 80% of all verdicts in the federal courts are obtained after guilty pleas; and that prior to Rule 11's recent amendment, not all district judges personally questioned defendants before accepting their guilty pleas. Thus, in view of the general application of Rule 11 in a manner inconsistent with our holding in McCarthy, and in view of the large number of constitutionally valid convictions that may have been obtained without full compliance with Rule 11, we decline to apply McCarthy retroactively." 394 U.S. 831 at 832, 833, 89 S.Ct. 1498 at 1499.

8. The record indicates that at the sentencing hearing which occurred approximately five weeks after the entry of the plea, there was a dialogue between the court and defense counsel during which the court remarked that "the entire sentence must be served." Although the record indicates that this statement was made in the appellant's presence, there is nothing to suggest that the appellant grasped its significance.

sible for a second offender in a federal narcotics prosecution to have a complete understanding of the consequences of his plea of guilty when he is unaware that a statute precludes him from eligibility for parole.

The Supreme Court has consistently applied stringent standards for testing the validity of a plea of guilty. These requirements, recently reviewed by this Court in United States ex rel. Crosby v. Brierley, 404 F.2d 790 (3 Cir. 1968), emphasize that an essential ingredient of a guilty plea is that it be entered "voluntarily after proper advice and with full understanding of the consequences."[9] Federal Criminal Rule 11, as constituted before its amendment in 1966, was but a restatement of this constitutional principle.

It is important to note, however, that not every result of a plea is a "consequence" within the meaning of Rule 11. For example, this Court held in United States v. Cariola, 323 F.2d 180 (3 Cir. 1963), that the failure of the trial court to advise a defendant of the possible loss of state voting rights as a result of conviction did not invalidate the entry of a guilty plea.

We are aware of the inclinations of some courts to suggest that the ineligibility for parole should be similarly categorized. In Smith v. United States, 116 U.S.App.D.C. 404, 324 F.2d 436, 441 (1963), cert. denied 376 U.S. 967, 84 S. Ct. 978, 11 L.Ed.2d 975 (1964), the court held that "eligibility for parole is not a 'consequence' of a plea of guilty, but a matter of legislative grace." The same conclusion was reached in Trujillo v. United States, 377 F.2d 266 (5 Cir. 1967), cert. denied 389 U.S. 899, 88 S.Ct. 224, 19 L.Ed.2d 221.

Under ordinary circumstances, it should not become necessary for a trial court to include an explanation of probation or parole in its inquiry into the defendant's understanding of his plea. But

the circumstances here were not ordinary. The particular status of this defendant as a narcotics recidivist brought into mechanical operation a Congressional directive severely restricting the freedom of action of not only the sentencing judge but the entire apparatus of the Board of Parole.

In any normal sentencing procedure in the federal courts, a sentence prescribing a number of years of imprisonment generally means that the defendant may expect to serve approximately one-third of this term with good conduct. Probation and parole are concepts which our society has come to accept as natural incidents of rehabilitation during imprisonment.

This is not true where, as here, because of a Congressional directive tucked away in a relatively obscure section of the Internal Revenue Code, a narcotics offender is faced with the unconditional loss of probation and parole. This loss becomes an inseparable ingredient of the punishment imposed. Its effect is so powerful that it translates the term imposed by the sentencing judge into a mandate of actual imprisonment for a period of time three times as long as that ordinarily expected.

The mandate of Rule 11, before and after the 1966 amendment, is designed to insure that the pleader is made aware of the outer limits of punishment. At the very least, this means that he must be apprised of the period of required incarceration. Except for capital punishment, no other consequence can be as significant to an accused as the period of possible confinement. When one enters a plea of guilty he should be told what is the worst to expect. At the plea he is entitled to no less—at sentence he should expect no more.

■ Under such circumstances, the knowledge of ineligibility for parole is as necessary to an understanding of the plea as is the knowledge of the maximum

---

9. Although Crosby concerned a state conviction, the principles set forth as an expression of the constitutional standards governing the reception of a guilty plea are, of course, equally applicable to the present case.

sentence possible. Failure to impart this information constituted a failure to explain to the appellant the consequences of his plea.

We therefore reach the same conclusion as did the Ninth Circuit in Munich v. United States, 337 F.2d 356 (1964): "[O]ne who, at the time of entering a plea of guilty, is not aware of the fact that he would not be eligible for probation or parole, does not plead with understanding of the consequences of such a plea." [10]

Accordingly, the judgment of the district court will be reversed and the case remanded with directions to vacate the judgment of conviction and sentence in order to afford the appellant a new opportunity to plead to the indictment.

10. See also Bailey v. MacDougall, 392 F. 2d 155 (4 Cir. 1968), cert. denied 393 U.S. 847, 89 S.Ct. 133, 21 L.Ed.2d 118 and Wilson v. Rose, 366 F.2d 611 (9 Cir. 1966).