

1995 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-21-1995

# Parry v Rosemeyer

Precedential or Non-Precedential:

Docket 94-3335

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1995

Recommended Citation

"Parry v Rosemeyer" (1995). *1995 Decisions.* Paper 228.
http://digitalcommons.law.villanova.edu/thirdcircuit_1995/228

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1995 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

No. 94-3335


THOMAS G. PARRY #BH-2648,

Appellant

v.

FREDERICK ROSEMEYER


On Appeal from the United States District Court
For the Western District of Pennsylvania
D.C. Civ. No. 93-cv-01792


Submitted Under 3rd Cir. LAR 34.1(a)
June 5, 1995

Before:  BECKER, NYGAARD, and ALITO, Circuit Judges.

(Opinion Filed:               )


THOMAS S. WHITE, ESQUIRE
Federal Public Defender
W. PENN HACKNEY, ESQUIRE
First Assistant Federal Public Defender
KAREN SIRIANNI GERLACH, ESQUIRE
Assistant Federal Public Defender

415 Convention Tower
960 Penn Avenue
Pittsburgh, PA  15222

Attorneys for Appellant, Thomas G. Parry


ROBERT E. COLVILLE, ESQUIRE
District Attorney
KEMAL ALEXANDER MERICLI, ESQUIRE
Assistant District Attorney
THOMAS N. FARRELL, ESQUIRE

Assistant District Attorney

Office of the District Attorney
401 Allegheny County Courthouse
Pittsburgh, PA  15219-2489

Attorneys for Appellee,
Frederick Rosemeyer

OPINION OF THE COURT

BECKER, Circuit Judge.

Thomas G. Parry appeals from an order of the district court denying his petit[ion]
a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  His appeal presents the q[uestion]
whether a judge's or defense counsel's failure to advise a defendant offering a [plea of]
guilty that, if he or she is sentenced to probation, his or her probation can be [revoked]
if it is violated and a term of imprisonment substituted in its place, renders t[he plea]
unknowing and involuntary.  We hold that a judge's failure to advise a defendant [who is]
planning to plead guilty about such consequences of revocation of probation d[oes not]
constitute a violation of due process because these are collateral rather than [direct]
consequences of a guilty plea.  We further hold that no violation of the Sixth Am[endment]
right to effective assistance of counsel was made out here because the prejudice p[rong of]
Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984), has not been sat[isfied.]
Accordingly we affirm.

I.  FACTS AND PROCEDURAL HISTORY

An information filed in the Court of Common Pleas of Allegheny County in M[arch 1986]
charged Parry with one count of robbery in violation of 18 PA. CONS. STA[T. ANN.]
§ 3701(a)(1)(i) or (ii) (first-degree robbery) and one count of criminal conspi[racy in]
violation of 18 PA. CONS. STAT. ANN. § 903(a)(1).  Parry was offered, and he acce[pted]

3

plea agreement.  In exchange for Parry's agreement to plead guilty to a felony

second degree on the robbery count, 18 PA. CONS. STAT. ANN. § 3701(a)(1)(iv), and

count of criminal conspiracy, the district attorney agreed to a sentence of ele

one-half to twenty-three months imprisonment on the robbery count to be followed

years of probation on the conspiracy count.  Parry could have received up to twent

imprisonment for these crimes under Pennsylvania's sentencing procedures.  See 18 F

STAT. ANN. §§ 905(a) and 1103(2).[0]  The agreement allowed Parry to withdraw his guil

for any reason up to the time of sentencing.

At Parry's guilty plea hearing, the judge discussed with him the terms of t

agreement, including the proposed sentence.  Neither the judge nor Parry's a

specifically discussed with him the possible ramifications of a probation vio

Parry was sentenced by the same judge at a separate hearing on December 21, 1

accordance with the negotiated plea.  There was no specific discussion at the sen

hearing about what might happen to Parry if he violated the conditions of his proba

Parry served his term of imprisonment, but while he was on probation and pa

was arrested for burglary and related crimes.  The same judge who earlier had se

Parry held a probation violation hearing on February 20, 1991, and, inter alia,

the term of probation and sentenced him to two to ten years on the conspiracy count

---

[0] 18 PA. CONS. STAT. ANN. § 905(a) provides in relevant part that conspiracy is a crime
same grade and degree as the most serious offense which is an object of the cons
Section 1103(2) provides that a person who has been convicted of a felony of the
degree may be sentenced to imprisonment "for a term which shall be fixed by the c
not more than ten years."  18 PA. CONS. STAT. ANN. § 1103(2).  Thus, an individual co
of second-degree robbery and conspiracy to commit second-degree robbery, if sente
both counts and ordered to serve the sentences consecutively, could serve up to 2
in prison.

[0] The judge warned Parry in general terms about staying out of trouble in the future, but we do not consider this general
have been directed at the potential consequences of violating the probationary period to which Parry was about to be senten

[0] Eventually, following his conviction by a jury, Parry received a sentence of four to eight years imprisonment on the ne
charges.

4

After unsuccessfully seeking relief in state court in 1991 under the Post Con

Relief Act, 42 PA. CONS. STAT. ANN. §§ 9541 et seq., and not prevailing in his

thereon to the Pennsylvania Superior and Supreme Courts in 1992 and 1993, Parry fi

present habeas petition in the district court for the Western District of Pennsy

naming Frederick Rosemeyer, Warden of the State Correctional Institution at Gree

Pennsylvania, and the Attorney General of Pennsylvania as respondents. In his pe

Parry raised the same two grounds for relief that were presented in the state

namely, that his guilty plea was involuntary and unknowing in violation

constitutional right to due process because he was not advised that the sentencin

could impose a two to ten year term of imprisonment in place of the two-year

probation upon violation of the terms of his probation, and that his couns

ineffective for failing to advise him of the potential consequences of revoca

probation.

The District Attorney of Allegheny County filed an answer to the habeas peti

behalf of the respondents, conceding that the claims were exhausted and address

merits of the petition.[0] Thereafter, the magistrate judge filed a Repo

Recommendation in which he recommended that the petition be dismissed. Objectic

filed, but the district court adopted the Report and Recommendation and dismis

petition. A timely motion for reconsideration was denied and this timely appeal fo

We granted Parry's request for a certificate of probable cause to appeal and cour

appointed to represent him in these proceedings. We now affirm.

II. DUE PROCESS

A.

---

[0] In their brief on appeal, the respondents alluded to the possibility that the ineffective assistance of counsel claim m
exhausted after all, because it was abandoned on appeal following denial of the post-conviction petition. We have reviewe
filed in the Superior Court on Parry's behalf and the petition for allowance of appeal filed in the Supreme Court, especiall
the text of the arguments contained therein, and we find that the ineffective assistance of counsel claim was fairly presen
courts and is, thus, exhausted. See Picard v. O'Connor, 404 U.S. 270, 92 S. Ct. 509 (1971).

Parry submits that, had he known that a violation of the terms of his probatio[n]
result in a term of imprisonment of up to ten years on the conspiracy count, he wo[uld]
have agreed to plead guilty; thus, he says, his guilty plea was unknowing and invo[luntary,]
in violation of due process. Parry further argues that, because counsel did not [tell]
him that he could receive up to ten years on the conspiracy count to which he ple[d]
should he violate his probation, counsel rendered ineffective assistance in viola[tion of]
the Sixth Amendment. Parry asks this court to grant a writ of habeas corpus or[, in the]
alternative to remand for an evidentiary hearing on the voluntariness of his plea.

In the state court post-conviction proceedings, the court found, following a [hearing]
at which Parry and his counsel testified, that Parry's plea was voluntary. Whether[ a plea]
of guilty is voluntary is a question of law and not a question of fact subject [to the]
presumption of correctness of 28 U.S.C. § 2254(d). Marshall v. Lonberger, 459 U.[S.]
431, 103 S. Ct. 843, 849 (1983). Thus, a federal habeas court's review of the i[ssue of]
the voluntariness of a guilty plea is plenary.

We note preliminarily that Parry has no other complaint about the process b[y which]
his plea was taken. The record shows that he completed and signed a sev[en-page]
questionnaire concerning his agreement to waive his right to trial by a jury, and [he]
answered yes to questions concerning whether his guilty plea was voluntary, whe[ther he]
understood the maximum term for the offense of conviction, and whether he was sa[tisfied]
with counsel's representation. His counsel also signed the form, certifying that [he]
advised Parry of his rights and of the meaning of the questions contained in the fo[rm and]
that Parry's plea was voluntarily entered into. At the guilty plea hearing[, Parry]
testified that he had gone over the seven-page questionnaire with his attorney and [that he]
had answered the questions truthfully. In addition, he represented that he was sa[tisfied]
with counsel's representation. Counsel testified that he felt that Parry underst[ood the]
questionnaire and understood the significance of pleading guilty. Parry's only co[mplaint]
then is that no one told him that he could be ordered to serve a term of impriso[nment]

6

place of a revoked term of probation and that the term of imprisonment could exc

length of the term of probation.[0]

B.

   To comport with the Fifth Amendment, a defendant's plea of guilty must be vo

and intelligent.  <u>Boykin v. Alabama</u>, 395 U.S. 238, 89 S. Ct. 1709 (1969).   A

guilty will not be found to be unknowing and involuntary in the absence of proof t

defendant was not advised of, or did not understand, the direct consequences of hi

<u>Brady v. United States</u>, 397 U.S. 742, 755, 90 S. Ct. 1463, 1472 (1970).   A

consequence is one that has a "definite, immediate, and largely automatic" effect

range of the defendant's punishment. <u>Cuthrell v. Director, Patuxent Inst.</u>, 475 F.2

1366 (4th Cir.), <u>cert.</u> <u>denied</u>, 414 U.S. 1005, 94 S. Ct. 362 (1973).   We have he

"[t]he only consequences considered direct are the maximum prison term and fine

---

[0]The judge who accepted the plea and sentenced Parry to probation on the conspiracy count had the authority to impose a s
to and including the maximum when Parry violated his probation, because his probationary term was in lieu of a se
Pennsylvania, the consequences of a violation of probation depend on whether the judge has either imposed and then s
prison sentence or deferred imposing a sentence in the first instance:

> If a defendant is sentenced, but the judge chooses to suspend sentence pending a period of probation, the t
> judge may re-sentence the defendant if he violates that probation.  The maximum period of the re-sentence is limi
> however, to the maximum term under which the defendant was originally sentenced. . . .
>
> . . . By exercising the statutory option of imposing a period of probation in *lieu* of sentencing, t
> court defers sentencing a defendant to a fixed term of imprisonment until su
> time as the defendant has violated the conditions of his probation.  In oth
> words, the setting of the term of probation is not a term of sentence, and m
> not act as a limitation on the court to impose a sentence for a term of yea
> greater than the probationary period, not in excess of the maximum fixed by l
> for the particular offense.

<u>Commonwealth v. Cole</u>, 294 A.2d 824, 825–26 (Pa. Super. 1972) (emphasis added) (fir
violation of double jeopardy clause).  <u>See also</u> <u>Commonwealth v. Raynes</u>, 503 A.2d
Super. 1986), <u>allocatur</u> <u>denied</u>, 522 A.2d 1105 (Pa. 1987); 42 Pᴀ. Cᴏɴs. Sᴛᴀᴛ. Aɴɴ. §
(upon revocation court possesses same sentencing alternatives as were available at
initial sentencing).

7

offense charged." United States v. Salmon, 944 F.2d 1106, 1130 (1991), cert. deni

U.S. 1110, 112 S. Ct. 1213 (1992).

Due process does not, however, require that a defendant be advised of

collateral consequences of pleading guilty, even if they are foreseeable. In acc

with this rule, we have previously held that deportation is a collateral consequen

guilty plea that need not be explained in a Rule 11 proceeding. See United St

Romero-Vilca, 850 F.2d 177, 179 (3d Cir. 1988). Similarly, in United States v.

944 F.2d 1106 (3d Cir. 1991), cert. denied, 502 U.S. 1110, 112 S. Ct. 1213 (1992)

the defendant contended that his (previous) pleas of guilty to the predicate offens

involuntary because he was not informed of the (enhanced) effect they might

sentencing for future offenses under a career offender scheme, we held that the ef

a conviction on sentencing for a later offense is a collateral consequence. Id. a

In addition, in Kincade v. United States, 559 U.S. 906 (3d Cir.) (per curiam)

denied, 434 U.S. 970, 98 S. Ct. 519 (1977), where the defendant challeng

voluntariness of his federal guilty plea because the starting time of his sente

delayed due to a subsequent state court conviction, we held that the effect of ol

of Title 18 of the criminal code (that a federal sentence will run consecutive to

than concurrently with a state sentence) is not a direct consequence of a guilty p

We have also held that loss of one's job as a result of being convicted of a

see United States v. Crowley, 529 F.2d 1066, 1072 (3d Cir.), cert. denied, 425 U.

96 S. Ct. 2209 (1976), and deprivation of voting rights, see United States v. Cario

F.2d 180, 186 (3d Cir. 1963), are collateral consequences the failure to inform o

will not invalidate a plea. In Cariola, we explained that imposing a burden of exp

Parry was informed that the statutory maximum for conspiracy to commit second-degree robbery is ten years. Parry answer
the question pertaining to his knowledge of the maximum sentences for each count on the seven-page guil
questionnaire, and his sentencing colloquy provides no reason to conclude that he
in fact know that a conspiracy conviction could result in a ten year sentence.

This statute was repealed in 1986 and replaced without substantial change by 18 U.S.C. § 3585. See Barden v. Keoh
F.2d 476, 480 (3d Cir. 1990).

8

all possible collateral consequences on a trial judge was "out of all proportion

essentials of fair and just administration of the criminal laws." Id.

These precedents strongly support the Commonwealth's contention that the fact

term of imprisonment potentially greater than the term of probation can be impos

revocation of probation need not be discussed with a defendant who is planning t

guilty. As we explained in Kincade, "not all possible variations in time of incarc

amount to direct consequences." 559 F.2d at 909. Clearly, revocation of probation

an immediate and automatic consequence of pleading guilty. See Cuthrell, 475

1366. Like a subsequent state court conviction, cf. Kincade, 559 F.2d at 908, rev

of probation may or may not occur sometime in the future, and whether it oc

dependent on the actions of the defendant. A sentence of imprisonment upon revoca

probation is not generated by the plea but by the defendant's own unwilling

inability to conform to the restrictions imposed as part of probation. Therefore,

of imprisonment imposed in place of a revoked term of probation would be a

consequence of violating a condition of probation (here, the condition that Parry

rearrested), but not of pleading guilty.

While this automatic/nonautomatic distinction weighs strongly in favor of hol

re-sentencing in this case to be merely a collateral consequence of Parry's guilt

Parry maintains that a sentence of imprisonment upon revocation of probation is not

a collateral consequence. That is because, although he was told that the maximum

that he would receive for his two convictions taken together was twenty-three mo

prison and two years on probation, for a total penalty of just under four yea

maximum penalty to which he ultimately was exposed on the two counts became twent

months plus ten years, or nearly twelve years, all of it prison time. Thus

submits, his re-sentencing upon revocation of probation was indeed a direct consequ

his guilty plea due to the effect on his maximum term. We disagree. Parry

9

backwards from the consequences of his subsequent misconduct without recognizing

was that misconduct itself which led to his present plight, not the original senten

Our position is supported by Torrey v. Estelle, 842 F.2d 234 (9th Cir. 19

which the respondents rely, and the facts of which approximate what happened to Par

Torrey, the defendant entered a plea of guilty to one count of first-degree

Pursuant to a negotiated plea, the court sentenced Torrey, who was nineteen years

serve his time in the California Youth Authority rather than a state prison.

understood that the Youth Authority would retain him in custody until the age of

five. However, after serving two years in the custody of the Youth Authority, Tor

found not amenable to Youth Authority treatment because he had attempted to purchas

through the mail. The sentencing court then imposed a sentence of twenty-five y

life in the state prison.

In his ensuing habeas petition, Torrey argued that his guilty plea was invo

because he had not been advised of the negative consequences of exclusion from th

Authority. The Ninth Circuit found that Torrey's commitment to state prison af

Youth Authority found him not amenable to treatment was a collateral consequence

plea that did not require prior advice from the court or his counsel. The court r

that Torrey's failure to adjust at the Youth Authority was in his own hands and

automatic consequence of his guilty plea. Id. at 236. Similarly, we hold that

re-sentencing following his probation violation was a collateral consequence of his

plea.[0]

---

[0]Parry gets no aid from Innes v. Dalsheim, 864 F.2d 974 (2d Cir. 1988), cert. denied, 493 U.S. 8
S. Ct. 50 (1989). Defendant Innes was allowed to remain at liberty pending sen
after agreeing to plead guilty in exchange for a lenient sentence on four counts of
degree robbery. While at liberty during the interim between the plea hear
sentencing, Innes was arrested on three more robbery charges. At the sentencing h
the court ruled that Innes had breached the plea agreement by virtue of his new a
thus the court was not required to impose the reduced sentence. Instead, it im
sentence greater than that which had been negotiated. The court summarily denied
motion to withdraw the plea. On appeal, the Second Circuit held that due process r

C.

In reaching this conclusion, we are aware that a term of special parole has be[...]
to directly affect the maximum possible sentence and that it must be discussed [...]
defendant prior to acceptance of the plea.  See United States v. Cleary, 46 F.3d 3[...]
(3d Cir. 1995), petition for cert. filed July 24, 1995 (No. 95-5348).  In 1982, [...]
was amended to require federal trial judges to inform the defendant of the [...]
possible penalty provided by law, including the effect of any special parole term, [...]
accepting a guilty plea.[0]  The Notes of the Advisory Committee on Rules regarding t[...]
amendment recommended that a judge inform a defendant of the following fou[...]
involving special parole:

> (1) that a special parole term will be added to any prison [...]
> sentence he [or she] receives;
>
> (2) the minimum length of the special parole term that must be [...]
> imposed and the absence of a statutory maximum;
>
> (3) that special parole is entirely different from -- and in [...]
> addition to -- ordinary parole; and
>
> (4) that if the special parole is violated, the defendant can be
> returned to prison for the remainder of his [or her] sentence and the
> full length of his [or her] special parole term.

1982 Amendment Advisory Committee Note, FED. R. CRIM. P. 11(c)(1) (emphasis added) [...]
Moore v. United States, 592 F.2d 753, 755 (4th Cir. 1979)).

The requirement of such advice is the result of a rule of procedur[...]
constitutional doctrine.  But even assuming that the precepts of amended Rule 1[...]
somehow inform the due process inquiry, that would not help Parry, for ther[...]

---

that Innes be allowed to withdraw his plea because he did not receive the sent[...]
bargained for and because he was told neither that he would be unable to withdraw h[...]
nor that his plea would stand regardless of whether he was rearrested.  Innes, 864 [...]
979.  But Innes is inapposite. Unlike Innes, Parry did receive the benefit of his [...]
at his sentencing.  We agree that had he not, he would have been entitled to witho[...]
plea.  But Parry bargained for a sentence of probation, and that was the sentence i[...]
Parry ultimately received a higher sentence than he was expecting solely because[...]
post-sentencing conduct in violation of the terms of his probation.

[0] In 1989, the rule was amended to include supervised release.

11

fundamental distinction between a special parole term and ordinary parole.

ordinary parole, . . . special parole increases the possible period of confineme

entails the possibility that a defendant may have to serve his original sentence

substantial additional period, without credit for time spent on parole." Moore, 5

at 755 (footnote omitted). That is why the nature and effect of a term of special

must be explained to, and understood by, a defendant before his or her plea

considered voluntary and knowing. See also United States v. Baylin, 696 F.2d 103

n.18 (3d Cir. 1982) ("Rule 11 requires that special parole effects be explained

they are cumulative to any prison term imposed, and they therefore effectively exp

maximum possible sentence for the offense").

The 1982 amendment to Rule 11 was not intended to change the rule that, with

to ordinary parole, a defendant need not be advised that if parole is violated, he

could be returned to prison. 1982 Amendment Advisory Committee Note, FED. R.

11(c)(1) (quoting Bunker v. Wise, 550 F.2d 1155, 1158 (9th Cir. 1977)); see also

v. United States, 572 F.2d 210, 211 (9th Cir. 1977) (effect of violation of o

parole is collateral consequence of pleading guilty). While this court has

decided whether a violation of ordinary parole is a collateral consequence of p

guilty, we previously have alluded to the distinction between probation and o

parole on the one hand and special parole on the other. See Baylin, 696 F.2d at 10

also Berry v. United States, 412 F.2d 189, 192 (3d Cir. 1969) ("Under o

circumstances, it should not become necessary for a trial court to include an expl

of probation and parole in its inquiry into the defendant's understanding of his p

In Baylin, we explained that "`[s]pecial parole,' which applies only to drug of

pursuant to 21 U.S.C. § 841 . . ., is imposed in addition to any term of years.

thus entirely different from early release parole." Baylin, 696 F.2d at 10

12

(emphasis added).  See also Roberts v. United States, 491 F.2d 1236 (3d Cir. 197

curiam).[0]

     We believe that, in terms of the effect on a defendant's sentence, probation

analogous to ordinary parole than to a special parole term.  That probation and o

parole have much in common as a general matter cannot be seriously doubted.  It

that in Pennsylvania, an order of probation is one of the sentencing alter

available to a judge, 42 PA. CONS. STAT. ANN. §§ 9721-22, while parole is an adminis

procedure, not a judicial one -- it does not affect the sentence, see 61 PA. CON

ANN. § 331.1; Rivenbark v. Board of Probation and Parole, 501 A.2d 1110, 1113 (Pa.

Nevertheless, the similarities between the two are greater than the differences.[0]

     Unlike a term of special parole, a term of probation is imposed in lieu of,

than in addition to, a normal sentence.  It does not effectively expand the

possible sentence for the offense.  Parry was not given a term of probation in addi

a sentence on the conspiracy count; he was given a term of probation instea

sentence.  He knew the length of the maximum possible term of imprisonment on that

Therefore, the sentencing judge was not constitutionally required to explain in det

potential effects of probation, including that if it is violated, a prison senten

---

[0] In Roberts, we distinguished ordinary parole from a special parole term, explaini
ordinary parole means a conditional release from incarceration under supervision at
prior to the expiration of the full prison term set by the sentencing court.  In co
a special parole term is used in addition to, and not in lieu of, normal sentenc
parole procedures.  Id. at 1238.

[0] Probation and parole provide the cornerstone for efforts to rehabilitate an offender, the theoretical rationale being that m
of family, work, and community ties are more likely to foster rehabilitation than is the harsh regimen of prison.  Accordi
eligible for probation and parole, an individual must possess certain good qualities of character.  See generally Commonwe
Butler, 328 A.2d 851, 856 (Pa. 1974) (parole); Commonwealth v. Wicks, 401 A.2d 12
Super. 1979) (factors warranting probation codified under former § 1322 of Titl
Pennsylvania Sentencing Code); see also NEIL P. COHEN & JAMES J. GOBERT, THE LAW OF PROB
PAROLE 8-9, 16, 46-62, 111-16 (1983 & Supp. 1993).  In sharp contrast, special
permits additional monitoring of, and supervision for, drug offenders, see ge
United States v. Ferryman, 897 F.2d 584, 586 (1st Cir.), cert. denied, 498 U.S. 8
S. Ct. 90 (1990), and a drug conviction is the only eligibility requirement.

13

term of years greater than the probationary period, up to and including the maximu

the statute (which, we reiterate, Parry knew), can be imposed.

## D.

While provision of information concerning a collateral consequence like revoca

probation might be useful to defendants and our opinion today should not be

discouraging sentencing judges from providing such information, we do not think t

result we reach in this case is a harsh one. The judge's actions in imposing a

imprisonment in place of the revoked term of probation were foreseeable under Penns

law. Under 42 PA. CONS. STAT. ANN. § 9771(c)(1), committing additional crimes will

or endanger a previously imposed sentence of probation. See Commonwealth v. Mill

A.2d 1263, 1265 (Pa. Super. 1986), allocatur denied, 528 A.2d 956 (Pa. 1987). A

else "would be contrary to the policy and the purposes to be served by probation

probationer's criminal conduct . . . discloses that probation will not be in t

interests of the public or the defendant, a court may revoke or change the o

probation. The commission of a new crime violates an implied condition of probat

suggests that the defendant is a poor probation risk." Id.

We note that, on this record, Parry had more than a passing familiarity w

probation process in Pennsylvania. He was on probation or parole at the time he co

the robbery for which he received the eleven and one-half to twenty-three month se

and he knew that by pleading guilty to the charged robbery he was in danger o

sentenced separately for violating this prior probation or parole.[0] That Parry's s

---

[0] At the plea colloquy, the judge and Parry engaged in the following exchange:

> Court: Why are you pleading guilty?
>
> Parry: Because I am guilty.
>
> Court: You admit participating in this robbery as charged?
>
> Parry: Yes.

14

on his guilty plea might ultimately exceed in length the term of probati

foreseeable; Parry had previously violated probation prior to pleading guilty

robbery and conspiracy counts involved here and actually knew generally that impri

was a possible consequence of a probation violation. On these facts, we cannot s

Parry's plea was unknowing in contravention of the requirements of due process.

III. INEFFECTIVE ASSISTANCE OF COUNSEL

Parry has also argued that even if the sentencing court had no duty to advise

the effect of revocation of probation, his counsel had such a duty, and that co

failure to properly advise him renders his plea involuntary. We, of course, apply

part test to evaluate claims of ineffective assistance of counsel. First, the de

must show that counsel's representation fell below an objective standard of reasona

demanded of attorneys in criminal cases. Second, counsel's error must have prejudi

defendant. Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984); United

v. Day, 969 F.2d 39, 42 (3d Cir. 1992). Where a defendant enters a plea of guilty

advice of counsel, the voluntariness of the plea depends on whether there is a rea

---

Court: Were you on probation or parole at that time?

Parry: Yes.

Court: Now, do you understand that by pleading guilty you also admit to whatever judge has you on probatio that you violated that probation or parole?

Parry: Yes.

Court: And you may be sentenced separately for that. Do you understand that?

Parry: Yes.

Court: And you discussed that aspect with your attorney as well?

Parry: Yes, I did.

App. 91-92.

15

probability that, but for counsel's errors, the defendant would have proceeded t instead of pleading guilty.  Hill v. Lockhart, 474 U.S. 52, 106 S. Ct. 366 (1985); States v. Nahodil, 36 F.3d 323, 326 (3d Cir. 1994).

We are skeptical of the claim that counsel's failure to inform Parry of the p consequences were Parry to violate his probation by committing more crimes counsel's assistance unprofessional or incompetent.  See Torrey, 842 F.2d at 237 to advise of possible commitment to state prison does not fall below objective star reasonableness). Parry received the benefit of the bargain negotiated for him by c The plea bargain was satisfied when Parry received the sentence of eleven and one- twenty-three months imprisonment and two years probation.  Counsel did not affirm mislead Parry with respect to the consequences of revocation of probation; the simply never came up.  But as we observed in United States v. Nino, 878 F.2d 101, Cir. 1989), courts have divided on the question whether counsel's failure to a client about another collateral consequence of pleading guilty -- deportation constitute deficient representation.  In Nino, we declined to reach the question the prejudice prong of Strickland so clearly had not been satisfied. As in Nino, reserve for another day the question whether the failure to advise a defendant ab consequences of a revoked term of probation falls below an objective stand reasonableness because Parry has clearly failed to show that he was prejudiced alleged improper omission.

A defendant alleging ineffective assistance of counsel in the guilty plea must make more than a bare allegation that but for counsel's error he would have not guilty and gone to trial.  See, e.g., Armstead v. Scott, 37 F.3d 202, 210 (5 1994), cert. denied, 115 S. Ct. 1709 (1995); Key v. United States, 806 F.2d 133, 1 Cir. 1986); United States v. Campbell, 778 F.2d 764, 768 (11th Cir. 1985).  Given

16

criminal history,[0] and notwithstanding that the case against him may not ha

overwhelming, the sentence he received seems relatively lenient.  Parry knew t

charges to which he pleaded guilty could result in a much higher penalty; the recor

that Parry was advised of, and understood, the maximum sentences for robbe

conspiracy.  He also understood that a term of probation carries with it some restr

on behavior.  The record does not substantiate that Parry was reluctant to plead gu

that he claimed to be innocent.  Cf. Nahodil, 36 F.3d at 326. Instead, it shows t

only hesitation in pleading guilty was that he might not be able to work out a s

sentencing deal on charges that he was facing in a different county.  Presuma

worked that problem out to his satisfaction, because he made no attempt to withd

plea prior to being sentenced, which the terms of the plea agreement permitted him

See supra at 4.

It was only after he was arrested on the new burglary charges and his pr

revoked and replaced with a term of imprisonment of two to ten years that Parry b

challenge the voluntary nature of his plea.  A challenge to the voluntariness of h

that had occurred before Parry was arrested on the new charges might possibly hav

us pause, but a challenge initiated only after a new arrest and revocation of pr

which is what we face here, is self-serving and must be viewed with skepticism

Cleary, 46 F.3d at 312.

In sum, with respect to the prejudice prong of Strickland, we cannot find tha

was a reasonable probability that but for counsel's alleged errors Parry wou

proceeded to trial on these charges.  See Hill v. Lockhart, 474 U.S. at 60, 106 S.

371; Nino, 878 F.2d at 105 (no prejudice where counsel failed to advise of possibi

deportation); United States v. Jordan, 870 F.2d 1310, 1318-19 (7th Cir.) (same

counsel failed to advise of possibility of subsequent federal prosecution), cert.

---

[0] In addition to being either on probation or parole when he pleaded guilty to second-degree robbery and conspiracy, Parr
prior arrests stemming in part, apparently, from a longstanding substance abuse problem.

17

493 U.S. 831, 110 S. Ct. 101 (1989); <u>United States v. Degand</u>, 614 F.2d 176, 178 (8

1980) (same, where counsel failed to advise that federal sentence would r

concurrently with state sentence).

IV. Conclusion

The sentence Parry received when his probation was revoked was not a

consequence of his guilty plea. Accordingly, due process did not obligate the ju

accepted the plea and sentenced Parry to a term of probation to advise Parry

consequences of revocation of probation, and her failure to do so does not form

for invalidating the plea for violation of Parry's Fifth Amendment rights. In ac

Parry was not prejudiced by counsel's failure to advise him that a new arrest coul

in revocation of probation and imposition of a term of imprisonment potentially ex

in length the term of probation, for he did not establish that he would not have

guilty but for counsel's omission. The order of the district court dismiss

petition for a writ of habeas corpus will therefore be affirmed.