514 A.2d 967

William D. Reider, Petitioner *v.* Commonwealth of Pennsylvania, Pennsylvania Board of Probation and Parole, Respondent.

334

Submitted on briefs June 11, 1986, to President Judge CRUMLISH, JR., Judges CRAIG, MACPHAIL, BARRY and COLINS.

*William D. Reider,* petitioner, for himself.

*Arthur R. Thomas,* Assistant Chief Counsel, with him, *Robert A. Greevy,* Chief Counsel, for respondent.

OPINION BY JUDGE MACPHAIL, September 5, 1986:

William D. Reider (Reider) has filed a petition for review of an order of the Pennsylvania Board of Proba-

tion and Parole (Board) which denied his application for parole. Before us for disposition is the Board's motion to quash.

The sole issue presented is whether the Board's denial of a parole application is reviewable by this Court.[1] The Board argues that parole is non-judicial and is not subject to judicial review and cites *LaCamera v. Board of Probation and Parole*, 13 Pa. Commonwealth Ct. 85, 317 A.2d 925 (1974) *(en banc)*. Reider, however, cites *Counts v. Pennsylvania Board of Probation and Parole*, 87 Pa. Commonwealth Ct. 277, 487 A.2d 450 (1985) for the proposition that the Board's denial of a parole application *is* reviewable by this Court, although such review is limited to a determination of whether the Board failed to exercise any discretion at all, whether it acted arbitrarily or capriciously and whether the Board's procedures impacted on the prisoner's constitutional rights.

Inasmuch as there is authority supporting both positions, we find it necessary to summarize the decisions regarding this Court's scope of review of Board orders denying parole.

In *Banks v. Board of Probation and Parole*, 4 Pa. Commonwealth Ct. 197 (1971) *(en banc)*, this Court observed that:

> The Pennsylvania Supreme Court, in Commonwealth ex rel. Sparks v. Russell, 403 Pa. 320,

---

[1] Reider alleges that the Board's action in denying him parole, *sua sponte* (since no application was filed by Reider), was unfair, arbitrary, discriminatory, prejudicial, a denial of his constitutional right to equal protection and due process of the law and constitutes cruel and unusual punishment.

The Board informed Reider that it had refused him parole because of: aggressive behavior, weapon involved in the commission of offense—firearm, recent misconduct, minimal involvement in available programs, need for counseling, treatment and educational/vocational training.

323, 169 A.2d 884, 885 (1961), cited Common-wealth ex rel. Nornhold v. Day, 67 Dauphin 1, (1954): 'The parole of a prisoner at the expiration of his minimum term is not a matter of right, it is a matter of grace and mercy and the granting, reinstatement and revocation of parole is within the exclusive jurisdiction of the Parole Board. . . .' It seems clear, then, that *this Court may not interfere with the discretion of the Board in granting parole unless the Board (1) fails to exercise any discretion or (2) arbitrarily and capriciously abuses its discretion or (3) violates a prisoner's constitutional rights.* Granted, as defendants argue, that parole is a matter of grace, and not right, once the Legislature establishes a principle that a prisoner has a right to apply for a parole, then the prisoner is entitled to have his application properly and fairly processed after which, if refused, he is entitled to a written explanation from the Board for its refusal to grant his application.

. . . .

So long as the Board receives the application for parole, reviews it in the light of all of the pertinent records and history relating to the prisoner, and gives a reasonable explanation for its refusal, the Board has met its responsibilities.

If the prisoner believes that the Board has violated his constitutional rights and is being held improperly in prison, he has a right to file for a writ of habeas corpus before a proper court. This Court does not have such jurisdiction. *We may only determine whether state officials have performed properly their statutory and constitutional responsibilities.*

In this case, the Board received the application, reviewed the prisoner's records, and explained in writing the reasons for its refusal. Whether or not this Court agrees with the wisdom of the reasons given by the Board in its letter of parole refusal is of no import.

4 Pa. Commonwealth Ct. at 200-201 (emphasis added).

In *LaCamera,* where no reference was made to *Banks,* we held that the action of the Board in refusing a parole at the expiration of a minimum sentence is not an adjudication subject to judicial review under the provisions of the Administrative Agency Law[2] because the definition of adjudication expressly excluded "any final order, decree, decision, determination or ruling . . . which involves paroles or pardons." *LaCamera,* 13 Pa. Commonwealth Ct. at 88, 317 A.2d at 926. In further support of our conclusion, we cited *Commonwealth v. Brittingham,* 442 Pa. 241, 275 A.2d 83 (1971) and held that "[p]arole, being a matter of administrative discretion and determination, is nonjudicial and not subject to judicial review under the law of Pennsylvania. . . ." *LaCamera,* 13 Pa. Commonwealth Ct. at 90, 317 A.2d at 927.

In *Bradshaw v. Pennsylvania Board of Probation and Parole,* 75 Pa. Commonwealth Ct. 90, 461 A.2d 342 (1983), we cited *Banks* for our scope of review and upheld the Board's denial of the prisoner's request to be interviewed for parole consideration. No mention was made of *LaCamera.*

In *Kastner v. Pennsylvania Board of Probation and Parole,* 78 Pa. Commonwealth Ct. 157, 467 A.2d 89 (1983), we reaffirmed our holding in *Banks* and reiterat-

---

[2] Act of June 4, 1945, P.L. 1388, *formerly* 71 P.S. §1710.2, repealed by Section 2(a) of the Judiciary Act Repealer Act, Act of April 28, 1978, P.L. 202, 42 P.S. §20002(a) [1244]. Similar provisions are now found at 2 Pa. C. S. §§501-508, 701-704.

ed that "a person seeking parole is entitled to have his application properly and fairly processed and that if the Board fails to exercise any discretion at all or arbitrarily and capriciously abuses its discretion or violates a prisoner's constitutional right, we may give relief." 78 Pa. Commonwealth Ct. at 158, 467 A.2d at 90.

> In *Counts,* we cited *Kastner* and *Banks* and stated: In recognition of the broad grant of discretion which the Board enjoys in parole matters and that the parole release decision is a highly subjective one, our scope of review of a Board order denying a parole application is limited to a determination of whether the Board failed to exercise any discretion at all, whether the Board arbitrarily and capriciously abused its discretion so as to amount to a violation of a constitutional right, and whether or not the procedure utilized by the Board violated any constitutional rights of the prisoner.

87 Pa. Commonwealth Ct. at 282-83, 487 A.2d at 453. In *Kastner* and *Counts,* no mention was made of *LaCamera*.

Most recently, in *Barnhouse v. Pennsylvania Board of Probation and Parole,* 89 Pa. Commonwealth Ct. 512, 492 A.2d 1182 (1985), we attempted to reconcile *LaCamera* and *Counts:*

> In accordance with Banks v. Pennsylvania Board of Probation and Parole, 4 Pa. Commonwealth Ct. 197 (1971), the board has a duty to process the petitioner's application for parole, and it has done so here. The board, however, has discretion to grant or deny parole because parole, being a matter of administrative discretion and determination, is nonjudicial and not generally subject to judicial review under the law of Pennsylvania. LaCamera v. Pennsylvania Board

of Probation and Parole, 13 Pa. Commonwealth Ct. 85, 317 A.2d 925 (1974).

However, where the petitioner asserts that denial of parole violated his constitutional rights, our scope of review includes a 'determination of whether the board failed to exercise any discretion at all, whether the Board arbitrarily and capriciously abused its discretion so as to amount to a violation of a constitutional right, and whether the procedure utilized by the Board violated any constitutional rights of the prisoner.' Counts v. Pennsylvania Board of Probation and Parole, [87] Pa. Commonwealth Ct. [277], 487 A.2d 450 (1985).

89 Pa. Commonwealth Ct. at 514, 492 A.2d at 1183.

In sum, *LaCamera* stands for the proposition that denials of parole are not reviewable by this Court, whereas *Banks, Kastner* and *Counts* would afford the denial of parole a limited review. It is apparent, therefore, that despite *Barnhouse,* these separate lines of cases cannot be reconciled.

For the reasons which follow, we now hold that denials of parole are not reviewable by this Court, and, to the extent that *Banks, Kastner* and *Counts* provide otherwise, they are overruled.

Section 21 of the Act of August 6, 1941, (Parole Act), P.L. 861, *as amended,* 61 P.S. §331.21, provides that:

The board [of Probation and Parole] is hereby authorized to release on parole any convict confined in any penal institution of this Commonwealth as to whom power to parole is herein granted to said board, . . . *whenever in its opinion the best interests of the convict justify or require his being paroled and it does not appear that the interests of the Commonwealth will be injured thereby.* The power to parole herein

granted to the Board of Parole may not be exercised *in the board's discretion* at any time before, but only after, the expiration of the minimum term of imprisonment fixed by the court in its sentence. . . . (Emphasis added.)

The Parole Act requires the Board to investigate the circumstances of offenses and the character and history of a prisoner when evaluating whether, *in its opinion,* the best interests of the prisoner and the Commonwealth justify his being paroled. *See* Section 19 of the Parole Act, 61 P.S. §331.19. If the Board refuses to parole the prisoner at the expiration of any minimum term, the Board must in writing inform the Pardon Board of its reasons for refusal to parole the prisoner. Section 21 of the Parole Act.

Whether or not the Board's decision is reviewable by this Court is dependent upon whether it falls within the purview of the Administrative Agency Law (Law), 2 Pa. C. S. §§501-508, 701-704. Since the Board is a Commonwealth agency, we look to the provisions providing for judicial review of Commonwealth agency action at 2 Pa. C. S. §§701-704. Section 701 of the Law provides that the Law applies "to all Commonwealth agencies regardless of the fact that a statute expressly provides that there shall be no appeal from an adjudication of an agency, or that the adjudication of an agency shall be final or conclusive, or shall not be subject to review." Section 702 of the Law provides that "[a]ny person aggrieved by an *adjudication* of a Commonwealth agency who has a direct interest in such *adjudication* shall have the right to appeal therefrom. . . ." (Emphasis added.) An adjudication is defined at 2 Pa. C. S. §101 to be

[a]ny final order, decree, decision, determination or ruling by an agency affecting personal or property rights, privileges, immunities, duties, liabilities or obligations of any or all of the

parties to the proceeding in which the adjudication is made. *The term does not include any order* based upon a proceeding before a court or *which involves* the seizure or forfeiture of property, *paroles,* pardons or releases from mental institutions. (Emphasis added.)

By definition, therefore, Board action of denying parole is not an adjudication subject to judicial review.

Although our Supreme Court has held that there is a constitutionally guaranteed right for a prisoner to seek review of a parole *revocation, Bronson v. Board of Probation and Parole,* 491 Pa. 549, 421 A.2d 1021 (1980), *cert. denied,* 450 U.S. 1050 (1981), there is a crucial distinction between the denial of parole and the revocation of parole that justifies the difference: in a parole revocation hearing, the parolee's liberty is at stake but in the matter of parole release, the inmate, of course, is already confined. *Greenholtz v. Nebraska Penal Inmates,* 442 U.S. 1 (1979).[3] In *Greenholtz,* the United States Supreme Court stated that a decision by a parole board as to whether or not a parole should be granted may be made for a variety of reasons, sometimes involving no more than an informed prediction as to what would best serve the safety and welfare of the inmate and the community. *See also Meachum v. Fano,* 427

---

. [3] The *Greenholtz* Court also pointed out that in a parole revocation matter the Board must determine whether under the facts the parolee violated conditions of parole and whether the parolee should be recommitted for his or society's benefit. In parole release situations, however, there is *no* set of facts which would *mandate* a decision favorable to the prisoner. This is for the obvious reason that the *only* condition upon which a prisoner *must* be released is the expiration of his maximum sentence. Thus, although we have said that we may examine parole release procedures to determine whether constitutional rights have been violated, we have no reported cases where we have utilized that basis to intervene in parole release cases.

U.S. 215, 225 (1976). That Court went on to say that "[t]he decision turns on a 'discretionary assessment of a multiplicity of imponderables, entailing primarily what a man is and what he may become rather than simply what he has done.'" 442 U.S. at 10, quoting Kadish, *The Advocate and the Expert—Counsel in the Peno-Correctional Process,* 45 Minn. L. Rev. 803, 813 (1961). The Court pointed out that the decision making process in parole cases differs from the norm because it depends upon record facts, personal observations and the experience of the decision maker which leads to a "predictive judgment" as to what is best both for the inmate and the community.

Because there are so many variables which are impossible for a court to properly evaluate and because our own Supreme Court has held that a parole is not an act of clemency but a penological measure for the disciplinary treatment of prisoners who seem capable of rehabilitation outside of prison walls, *see Commonwealth ex rel. Sparks v. Russell,* 403 Pa. 320, 169 A.2d 884 (1961) *(per curiam),* we believe that the action of the Board is uniquely one of administrative discretion not subject to our review.

Under Pennsylvania law, a prisoner has no constitutionally protected liberty interest in the expectation of being released from confinement prior to the expiration of the maximum term of the imposed sentence. *Blair v. Pennsylvania Board of Probation and Parole,* 78 Pa. Commonwealth Ct. 41, 467 A.2d 71 (1983), *cert. denied,* 466 U.S. 977 (1984). The mere *possibility* of parole affords no constitutional rights to prisoners. *See Board of Regents v. Roth,* 408 U.S. 564 (1972). Moreover, a parole eligibility date, usually set at the expiration of the prisoner's minimum sentence, does not vest any right to a grant of parole upon reaching that date. *See Krantz v. Pennsylvania Board of Probation and Pa-*

*role,* 86 Pa. Commonwealth Ct. 38, 483 A.2d 1044 (1984). Parole is a matter of grace and mercy shown to a prisoner who has demonstrated to the Board's satisfaction his ability to function as a law abiding member of society. *Bradshaw; Banks.* The General Assembly has granted the Board broad discretion in parole matters, *Commonwealth v. Vladyka,* 425 Pa. 603, 229 A.2d 920 (1967), and it is for the Board alone to determine whether or not the prisoner is sufficiently rehabilitated to serve the remainder of his sentence outside the confines of the prison. Because of the breadth of the Board's discretion, we believe that we cannot interfere with the discretion of the Board in granting parole.

Once the Board has performed its statutory duties under Section 19 of the Parole Act, regarding the collection of information about the prisoner, and Section 22 of the Parole Act, regarding the time restraints for the review of applications and the recording of its action thereon with reasons why a parole has been refused (where that is the Board's action), the Board has done all that the law requires.[4]

What the Board has decided, and why, being wholly a matter of the Board's discretion, is simply not subject to judicial review. We therefore hold that the Board's refusal to grant a parole is not reviewable by this Court and that the Board's motion to quash in this case must be granted.

---

[4] Of course, were a prisoner to allege that the Board failed to act, the prisoner could bring an action in the nature of mandamus. *See Bronson.* Note that mandamus is available to compel the Board to conduct a hearing or correct a mistake in applying the law. *Bronson.* Although Section 22 of the Parole Act, 61 P.S. §331.22 authorizes the Board to conduct hearings on parole applications when in *its* judgment such hearings are necessary, the *Greenholtz* Court did not consider parole application hearings necessary as a part of constitutional due process.

ORDER

The Pennsylvania Board of Probation and Parole's Motion to Quash is hereby granted and the Petition for Review is dismissed.

---

DISSENTING OPINION BY JUDGE BARRY:

Today a majority of this Court holds that a decision of the Board of Probation and Parole, determining that petitioner should not be granted parole, is not reviewable by the courts of this Commonwealth. Carrying this holding to its logical extreme, the Board could refuse to grant parole solely on the basis of a prisoner's race, sex or other classification which would violate that prisoner's constitutional rights and yet leave that individual without any recourse from the courts. I, therefore, must vigorously dissent.

In *LaCamera v. Pennsylvania Board of Probation and Parole,* 13 Pa. Commonwealth Ct. 85, 317 A.2d 925 (1974), this Court, with Judge (now President Judge) CRUMLISH dissenting, held that a decision by the Board refusing to grant parole to a prisoner was beyond the pale of judicial review. In cases which both precede and postdate the *LaCamera* decision, we have held that a prisoner having been denied parole could challenge that decision in the courts on the limited basis that the Board (1) failed to exercise any discretion or (2) abused its discretion or (3) violated the prisoner's constitutional rights. *Barnhouse v. Pennsylvania Board of Probation and Parole,* 89 Pa. Commonwealth Ct. 512, 492 A.2d 1182 (1985); *Counts v. Pennsylvania Board of Probation and Parole,* 87 Pa. Commonwealth Ct. 277, 487 A.2d 450 (1985); *Kastner v. Pennsylvania Board of Probation and Parole,* 78 Pa. Commonwealth Ct. 157, 467 A.2d 89 (1983); *Banks v. Pennsylvania Board of Probation and Parole,* 4 Pa. Commonwealth Ct. 197 (1971). Despite

these numerous cases we have decided in the twelve years since our decision in *LaCamera,* the majority chooses to overrule those cases which are inconsistent with *LaCamera.* For the following reasons, I do not believe that the reasoning employed can withstand critical analysis.

The opinion in *LaCamera* makes no mention of the issues attempted to be raised by the prisoner in his petition for review to this Court. It may very well be that allegations of error in that case were outside the limited scope of review first enunciated in *Banks.* Were this the case, it would explain the *LaCamera* court's failure to mention this limited scope of judicial review.

The majority also relies on the definition of "adjudication" in the Administrative Agency Law which states that "[t]he term does not include any order . . . which involves . . . parole. . . ." 2 Pa. C. S. §101. In *Bronson v. Pennsylvania Board of Probation and Parole,* 491 Pa. 549, 421 A.2d 1021 (1980), *cert. denied,* 450 U.S. 1050 (1981), the Supreme Court did not permit this definition of adjudication to deny appellate review in the parole revocation context. The Court states as follows:

Section 9 of Article 5 of our Constitution states:

§9. Right of appeal

There shall be a right of appeal in all cases to a court of record from a court not of record; and there shall also be a right of appeal from a court of record or from an administrative agency to a court of record or to an appellate court, the selection of such court to be as provided by law; and there shall be such other rights of appeal as may be provided by law.

Since the Board of Probation and Parole is an administrative agency of the Commonwealth, the Constitution mandates that a person dissatisfied

with its decisions must have the right to appeal that decision 'to a court of record or to an appellate court.'

*Id.* at 556, 421 A.2d 1024. I am aware that authority exists for the proposition that Article 5, §9 is not self-executing, *Manheim Township School District v. State Board of Education,* 1 Pa. Commonwealth Ct. 627, 276 A.2d 561 (1971). *Bronson* seems to hold otherwise. Certainly the spirit of the Constitution would indicate that the right of appeal should be reverenced.

The majority attempts to distinguish *Bronson* from the present case by positing that "there is a crucial distinction between the denial of parole and the revocation of parole that justifies the difference: in a parole revocation hearing, the parolee's liberty is at stake but in the matter of parole release, the inmate, of course, is already confined." 100 Pa. Commonwealth Ct. at 341, 514 A.2d at 971. In my view, this distinction is no more than legerdemain. Whether one's parole is revoked illegally or one is refused parole in violation of one's constitutional rights, the liberty interest involved is the same.

In the same context, the majority, in footnote 3 of its opinion, states that under no set of facts except where a prisoner's maximum sentence has expired is release mandated. I again must disagree. Assume for the moment that the only reason one is denied parole is because of his or her race, religion, gender or ethnic background when all prisoners of a different persuasion are granted parole. Assume further that the prisoner denied parole is capable of proving this discrimination and violation of his constitutional rights as has been done in many criminal and civil cases in other areas. To hold that release should not be mandated simply ignores a basic principle of constitutional law.

It is true that none of the decisions speaking to the limited scope of review in decisions denying parole have

granted a prisoner relief. To use this fact to deny one the opportunity to prove such violations cannot be countenanced. As petitioner here has alleged that the Board denied him parole by abusing its discretion and violating his constitutional rights, I believe the matter must be remanded to the Board to give the petitioner an opportunity to prove his allegations and complete a record which can permit us to exercise our duty of appellate review.

I cannot quarrel with the proposition that the Board has very broad discretion in these matters. At the same time, such discretion is not absolute. The Board must be accountable to a certain degree for its actions and for that reason, I dissent.