COMMONWEALTH of Pennsylvania, Appellee,

v.

Thomas STARK, Appellant.

Superior Court of Pennsylvania.

Submitted May 19, 1997.
Filed Aug. 6, 1997.

Ned J. Nakles, Jr., Latrobe, for appellant.

John Wm. Peck, II, District Attorney, Greensburg, for Commonwealth, appellee.

Before POPOVICH, HUDOCK and HOFFMAN, JJ.

POPOVICH, Judge.

This is an appeal from the order of the Court of Common Pleas of Westmoreland County which denied appellant's petition for relief pursuant to the Post Conviction Relief Act, 42 Pa.C.S.A. § 9541, *et seq.* Herein, appellant asks this court to expand the inquiry necessary to insure that an accused enters his guilty plea in a voluntary and understanding manner to include "any special circumstances affecting probation or release from incarceration." Upon review, we find that appellant's guilty plea was knowing and voluntary, despite the court's failure to advise appellant of the circumstances affecting parole and the changes in release rules of the Board of Probation and Parole after appellant was sentenced. Accordingly, we affirm the order of the PCRA court which denied appellant's requested relief.

Presently, appellant pleaded guilty on September 2, 1992, to charges of burglary and theft by unlawful taking. Pursuant to a plea agreement, appellant was sentenced to three year to six years of imprisonment. No further action was taken until November 17, 1995, when appellant filed a *pro se* writ of *habeas corpus.* Counsel was appointed, and this PCRA claim was brought. Both appellant's original writ of *habeas corpus* and his PCRA petition were filed in response to the denial of parole by the Pennsylvania Board of Probation and Parole, after the expiration of his minimum sentence. The PCRA court, in its opinion, noted:

> The [appellant] presented testimony which showed that a number of changes [in the parole release rules of the Pennsylvania Board of Probation and Parole] occurred subsequent to the imposition of sentence and contends that these changes directly affect the period of time during which he will remain incarcerated. For example, the Board now more closely scrutinizes inmates who were convicted of crimes of violence before making a determination on their eligibility for release; a conviction for burglary is considered to fall under the category of crimes of violence.

Furthermore, the number of signatories required for release of an inmate convicted of a "violent crime" was increased from two (2) to three (3) out of five possible Board members (N.T. 108). At least partly as a result of these changes, the release date on prisoner's minimum dates dropped from 80% in the years from 1992–1993 to 29% in the first quarter of 1996.

Undoubtedly, the disposition of the Parole Board has changed since the [appellant] entered his guilty plea; however, the [appellant] failed to show that, but for these changes, he would have been released on his minimum date.

■■■ Under the PCRA, a petitioner is eligible for relief if he pleads and proves by a preponderance of the evidence that he has been convicted of a crime for which he is currently serving a sentence and that his conviction has resulted from "a plea of guilty unlawfully induced where the circumstances make it likely that the inducement caused an individual to plead guilty." 42 Pa.C.S.A. §§ 9543(a)(1)(i), (2)(iii).[1] The error must not have been waived, or must meet certain specified exceptions. 42 Pa.C.S.A. § 9543(a)(3). A issue is waived where the petitioner failed to raise it and it could have been raised before trial, at trial, on appeal, in a habeas corpus proceeding actually conducted or in a prior PCRA petition. 42 Pa.C.S.A. § 9544(b). Since appellant's denial of parole and the changes in the parole release rules occurred after appellant's right to a direct appeal had expired and this is appellant's first PCRA petition, we find that this issue is not waived.

■■■ We also conclude that appellant has raised a cognizable issue. Appellant contends that the PCRA court erred when it rejected his request to withdraw his guilty plea because it was not "knowingly and voluntarily" entered since appellant was not advised of the "special circumstances affecting probation or release from incarceration" and the parole release policy of the Pennsylvania Board of Probation and Parole was substantially changed after appellant's sentencing. 42 Pa.C.S.A. § 9543(a)(2)(iii); *cf., Commonwealth v. Persinger*, 532 Pa. 317, 320–22, 615

A.2d 1305, 1307 (1992) (claim that plea was involuntary due to court's failure to advise defendant of possibility of consecutive sentences was cognizable under PCRA).

Our analysis of appellant's argument reveals a two-part argument. First, appellant contends that he was not advised of the "special circumstances affecting parole" when he pleaded guilty. Second, he claims that he should be permitted to withdraw his plea because changes to the parole release rules after imposition of his sentence effectively increased his minimum sentence and frustrated the terms of his negotiated plea. In both arguments, appellant submits that his plea was unlawfully induced because he was not aware of the consequences of his plea, and manifest injustice requires this court to permit him to withdraw his plea and remand the case to the Westmoreland Court of Common Pleas so that the court can resentence appellant in a manner which would permit appellant to become eligible for parole at the particular time which he and the court anticipated at the time of sentencing.

In *Persinger, supra,* our Supreme court set forth the appropriate standard to be applied when reviewing a PCRA petition to withdraw one's guilty plea, as follows:

> When considering a petition to withdraw a guilt plea submitted to a trial court after sentencing, ..., it is well-established that "a showing of prejudice on the order of manifest injustice is required before withdrawal is properly justified."

*Commonwealth v. Shaffer*, 498 Pa. 342, 446 A.2d 591 (emphasis omitted) (citations omitted).

Pennsylvania Rules of Criminal Procedure, Rule 319 governing guilty pleas, requires the court to conduct an on-the-record inquiry to determine that the plea is "voluntary and understandingly tendered." Pa.R.Crim.P. 319(a). In order to determine whether the plea is voluntary and understandingly entered the court must ask questions in six particular areas, including "Is the defendant aware of the

---

1. Appellant's PCRA petition is governed by the Post Conviction Relief Act, 42 Pa.C.S.A. § 9541 *et seq.*, as amended April 13, 1988. The most

recent version of the act was amended on November 17, 1995, effective in 60 days.

permissible range of sentences and/or fines for the offenses charged?" Pa.R.Crim.P. 319 comment. Inquiry into these areas is mandatory, *Commonwealth v. Willis*, 471 Pa. 50, 369 A.2d 1189 (1977); *Commonwealth v. Dilbeck*, 466 Pa. 543, 353 A.2d 824 (1976), and failure to make the inquiry will require that the defendant be allowed to withdraw his or her guilty plea. *See Commonwealth v. Kulp* 476 Pa. 358, 382 A.2d 1209 (1978). The purpose of this rule is to insure that the defendant fully understands the consequences of his election to plead guilty. In *Commonwealth v. Kulp*, we stated that:

> ... the decision to plead guilty to a charge could not be accepted as being knowingly and intelligently entered without an assurance that the accused fully comprehended the *maximum punishment that might be imposed for his conduct.* This information is obviously an integral part of the knowledge that should be possessed by one who is called upon the make the difficult decision to surrender his right to trial and place himself at the mercy of the sentencing court. No civilized society could tolerate the waiver of such basic rights from one who was unaware of or misinformed as to such a critical fact.

476 Pa. 358, 361, 382 A.2d 1209, 1211 (1978)(emphasis added).

*See also, Commonwealth v. Flood*, 426 Pa.Super. 555, 566–69, 627 A.2d 1193, 1199 (1993), *appeal denied* 537 Pa. 617, 641 A.2d 583 (1994) *citing Commonwealth v. Martin*, 416 Pa.Super. 507, 611 A.2d 731 (1992) *and Commonwealth v. Harris*, 403 Pa.Super. 435, 589 A.2d 264 (1991).

In *Persinger, supra*, our Supreme Court applied the foregoing and ruled that an accused not only must be advised of the maximum sentence for *each individual offense* for which he is pleading guilty, but also must be advised that those sentences may be imposed *consecutively*. The accused must be advised of the "total possible aggregate sentence". *Persinger*, 615 A.2d at 1308. Since Persinger was not advised that his sentences may be imposed consecutively and what his total possible aggregate sentence could be, our high court found that his guilty plea was not voluntarily and understandingly entered.

Thus, Persinger suffered a manifest injustice which required Persinger to be permitted to withdraw his guilty pleas. *Persinger*, 615 A.2d at 1308.

In reaching its decision, our Supreme Court cited the ABA Standards for Criminal Justice (2nd ed. 1980), Standard 14.14, relating to guilty pleas which, in relevant part, states:

> (a) The court should not accept a plea of guilty or nolo contendere from a defendant without first addressing the defendant personally and in open court and determining that the defendant understands:
>
>> (1) the nature and elements of the offense to which the plea is offered;
>>
>> (2) the maximum possible sentence on the charge, *including that possible from consecutive sentences,* and the mandatory minimum sentence, if any, on the charge, or of any special circumstances affecting probation or release from incarceration.

Herein, appellant invites this court to apply ABA Standards for Criminal Justice, Standard 14–1.4, *to extend* the court's duty to advise a defendant of his sentence to include "any special circumstances affecting probation or release from incarceration." Appellant argues that he should have been advised in regard to the possibility of parole after he has served his minimum period of incarceration. Since he was not made aware of the special circumstances affecting his *chance* for parole, he claims his plea unknowing and involuntary because those special circumstances, as a practical matter, increased his minimum sentence.

Appellant cites *Berry v. United States*, 412 F.2d 189 (3rd Cir.1969), for the proposition that under federal law, failure to inform a defendant that he would not be eligible for parole constituted a failure to explain the consequences of a guilty plea and vitiated the voluntary nature of the plea. At the time of Berry's guilty plea, a federal prisoner was eligible for parole after he served one-third of his sentence, provided he observed the rules of the institution in which he was incarcerated. 18 U.S.C.A. § 4202. However, Berry, having pleaded guilty to illegal sale of narcotics, was not eligible for parole because

of previous violations of the narcotics law. 26 U.S.C.A. § 7237. The sentencing court did not advise Berry that he would not be eligible for parole, but, in fact, had to serve his entire sentence.

On appeal, Circuit Judge Aldisert, for the Third Circuit Court of Appeals, wrote:

This [unconditional] loss [of probation and parole] becomes an inseparable ingredient of the punishment imposed. Its effect is so powerful that it translates the term imposed by the sentencing judge into a mandate of actual imprisonment for a period of time three times as long as that ordinarily expected.

The mandate of [Federal Criminal] Rule 11, before and after the 1966 amendment, is designed to insure that the pleader is made aware of the outer limits of punishment. At the very least, this means that he must be apprised of the period of required incarceration. Except for capital punishment, no other consequence can be as significant to an accused as the period of possible confinement. When one enters a plea of guilty he should be told what is the worst to expect. At the plea he is entitled to no less—at sentence he should expect no more.

Under such circumstances, the knowledge of ineligibility for parole is as necessary to an understanding of the plea as is the knowledge of the maximum sentence possible. Failure to impart this information constituted a failure to explain to the appellant the consequences of his plea.

*Berry,* 412 F.2d at 192–193.

Citing *Berry, supra,* and the ABA Standard for Criminal Justice, Standard 14.14, *supra,* appellant argues that the failure of the lower court to inform him of the circumstances affecting parole rendered his plea unknowing. However, we reject this argument.

To date, neither the General Assembly nor Pennsylvania's courts have required a trial court to advise a defendant who is pleading guilty of the circumstances affecting the defendant's eligibility for parole. In fact, as Circuit Judge Aldisert, in *Berry,* 412 F.2d at

192, recognized: "Under ordinary circumstances, it should not be necessary for a trial court to include an explanation of probation or parole in its inquiry into defendant's understanding of his plea." The guilty plea of of *Berry, supra,* was unique.[2] Without being advised of his *total* ineligibility for parole, Berry pleaded guilty without knowing his true minimum sentence and, in fact, had reason to believe he would be eligible for parole after only five years of his fifteen year sentence.

■ Presently, appellant does not deny that he was advised of his *actual maximum and minimum sentence.* We decline to extend the court's duty to advise a defendant of the sentencing consequences of his plea further than that required by Pa.R.Crim.P. 319, and existing Pennsylvania case law which requires the court to inform the defendant of the permissible range of sentences and the maximum punishment that might be imposed. *See, Persinger, supra; Kulp; supra. Compare, Commonwealth v. Zuber,* 466 Pa. 453, 353 A.2d 441 (1976) (defendant permitted to withdraw his plea where the negotiated sentence accepted by the court required his new sentence to be served concurrently with any "back time" required by the Parole Board, since, by statute, defendant must serve his "back time" consecutive to his new sentence; thus, while appellant was advised of his maximum sentence, he was misinformed of the *actual consequences* of his plea). Herein, appellant was fully advised of his maximum and minimum sentence (which were a part of appellant's negotiated plea), and we will not require trial courts to advise defendants of the release rules of the Pennsylvania Board of Probation and Parole.

Herein, appellant was actually advised in accordance with *Berry, supra,* since appellant was clearly "made aware of the outer limits of his punishment." *Id.,* at 192. Further, the federal judiciary, in addressing similar arguments, have consistently held that defendants need not be advised of collateral consequences of their pleas. *See, e.g., Parry v. Rosemeyer,* 64 F.3d 110, 116–119 (3rd Cir.

---

2. Judge Aldisert specifically indicated, "the circumstances [in *Berry* ] were not ordinary." *Ber-* *ry,* 412 F.2d at 192.

1995) (applying Pennsylvania law; defendant's guilty plea is not involuntary because at the time of the plea he was not advised of the consequences of subsequently violating his sentence of probation; resentencing after probation violation is a collateral consequence of his guilty plea); *United States v. Salmon,* 944 F.2d 1106 (3rd Cir.1991), *cert. denied,* 502 U.S. 1110, 112 S.Ct. 1213, 117 L.Ed.2d 451 (1992) (defendant contended prior pleas of guilty were involuntary because he was not informed of the effect they might have on sentencing for future offenses under a career offender scheme; effect of conviction on sentencing for later offenses is a collateral consequence of guilty plea); *Torrey v. Estelle,* 842 F.2d 234 (9th Cir.1988) (murder defendant's plea was not involuntary where court did not advised defendant of the possibility that he could be removed from his confinement in a juvenile facility and placed in a state prison; such information was a collateral consequence of his plea); *Holland v. United States,* 427 F.Supp. 733, 740–741 (E.D.Pa.1977) (trial court did not have to advise defendant when he pleaded guilty to bank robbery that parole examiners could consider the kidnapping charge which was nol prossed pursuant to plea bargain when determining eligibility for parole; the parole examiners ability to consider the nol prossed charge was not a "consequence" of the plea of which the court had the duty to inform the defendant before accepting his plea).

■ We find that a defendant's eligibility for parole is a "collateral consequence" of his guilty plea. *Cf., Commonwealth v. Brown,* 451 Pa.Super. 514, 680 A.2d 884 (1996) (effect of guilty plea on unrelated criminal sentence of probation is a collateral consequence of plea of which the court need not inform the defendant); *Sanchez v. United States,* 572 F.2d 210, 211 (9th Cir.1977) (effect of violation of ordinary parole is collateral consequence of pleading guilty); 1982 Amendment Advisory Committee Note, Fed.R.Crim.P. 11(c)(1), quoting *Bunker v. Wise,* 550 F.2d 1155, 1158 (9th Cir.1977) (defendant need not be advised when pleading guilty that he could be returned to prison if he violated parole). Consequently, we hold that the court need not advise a pleading defendant of the release rules of the Pennsylvania Board of Probation and Parole or his chances for

parole, even assuming the court could predict such an administrative procedure. *Rivenbark v. Board of Probation and Parole,* 509 Pa. 248, 501 A.2d 1110 (1985) (parole is an administrative, not judicial, matter).

■ We now turn to appellant's claim that his plea was not entered in a knowing and voluntary manner because the Parole Board's rules regarding release on probation changed after his plea so that he was not eligible for parole upon reaching his minimum sentence. As the trial court noted, appellant did prove that there were changes in the rules for release on parole after appellant was sentenced:

> For example, the Board now more closely scrutinizes inmates who were convicted of crimes of violence before making a determination on their eligibility for release; a conviction for burglary is considered to fall under the category of crimes of violence. Furthermore, the number of signatories required for release of an inmate convicted of a "violent crime" was increased from two (2) to three (3) out of five possible Board members (N.T. 108). At least partly as a result of these changes, the release date on prisoner's minimum dates dropped from 80% in the years from 1992–1993 to 29% in the first quarter of 1996.

Trial Court Opinion, p. 3.

Further, we note that appellant, through the testimony of Nicholas Muller, Chairman of the Pennsylvania Board of Probation and Parole, did prove that a new definition relating to crimes of violence which now includes burglary (appellant's crime) was created after appellant was sentenced. N.T., p. 108. Thus, appellant argues that a substantive, rather than merely procedural, change in the parole release rules was made after his incarceration on his burglary conviction. Appellant asks this court to remand the case so that the lower court can resentence him in a manner that would bring him within the jurisdiction of the Westmoreland Court of Common Pleas, not the Pennsylvania Board of Probation and Parole.

■ Without specifically making reference to the term, appellant apparently claims that the change in the parole release rules

amount to an invalid *ex post facto* law.[3] However, in Pennsylvania, there is no constitutional or inherent right of a convicted person to be conditionally released prior to the expiration of a valid sentence. As stated in *Reider v. Commonwealth Board of Probation and Parole,* 100 Pa.Cmwlth. 333, 514 A.2d 967 (1986), by our Commonwealth Court:

> Under Pennsylvania law, a prisoner has no constitutional protected liberty interest in the expectation in being released from confinement prior to the expiration of the maximum term of the imposed sentence. *Blair v. Pennsylvania Board of Probation and Parole,* 78 Pa.Commonwealth Ct. 41, 467 A.2d 71 (1983), *cert. denied,* 466 U.S. 977, 104 S.Ct. 2358, 80 L.Ed.2d 830 (1984). Moreover, a parole eligibility date, usually set at the expiration of the prisoner's sentence, does not vest any right to grant of parole upon reaching that date. *See Krantz v. Pennsylvania Board of Probation and Parole,* 86 Pa.Commonwealth Ct. 38, 483 A.2d 1044 (1984). Parole is a matter of grace and mercy shown to a prisoner who has demonstrated to the Board's satisfaction his ability to function as a law abiding member of society. *Bradshaw[v. Pennsylvania Board of Probation and Parole,*75 Pa.Cmwlth. 90, 461 A.2d 342 (1983)] ; *Banks[v. Board of Probation and Parole,* 1971 WL 13031] . The General Assembly has granted the Board broad discretion in parole matters, *Commonwealth v. Vladyka,* 425 Pa. 603, 229 A.2d 920 (1967), and it is for the Board alone to determine whether or not the prisoner is sufficiently rehabilitated to serve the remainder of his sentence outside the confines of prison. Because of the breath of the Board's discretion, we believe that we cannot interfere with the discretion of the Board in granting parole.
>
> Once the Board has performed its statutory duties under Section 19 of the Parole Act, regarding the collection of information about the prisoner, and Section 22 of the Parole Act, regarding the time restraints for the review of applications and the recording of its actions thereon with reasons why a parole has been refused (where that is the Board's action), the Board has done all that the law requires.
>
> What the Board has decided, and why, being wholly a matter of the Board's discretion, is simply not subject to judicial review. We therefore hold that the Board's refusal to grant a parole is not reviewable by this Court[.]

*Reider,* 514 A.2d at 971–972. *See also, Weaver v. Pennsylvania Board of Probation and Parole,* 688 A.2d 766, 769–770 (Pa. Cmwlth.1997).

Since appellant is attacking the discretionary function of the Board of Probation, i.e., the criteria which it employs in making parole decisions, we will not pursuant to *Reider, supra,* and its progeny, review appellant's assertion of error, even when an error of constitutional proportion is averred. *Cf., Weaver, supra* (claim that procedures used by Board were unconstitutional could not be raised in habeas corpus proceeding); *Shaw v. Pennsylvania Board of Probation and Parole,* 671 A.2d 290 (Pa.Cmwlth.1996) (allegations of due process and equal protection violations do not establish "liberty interest" and claims unreviewable); *King v. Pennsylvania Board of Probation and Parole,* 111 Pa.Cmwlth. 392, 534 A.2d 150, 151 (1987) (denial of parole in retaliation for assisting fellow inmates with legal problems not reviewable); *Johnson v. Board of Probation and Parole,* 110 Pa.Cmwlth. 142, 532 A.2d 50, 52 (1987) (due process contention not reviewable). *But see, Burkett v. Love,* 89 F.3d 135 (3rd Cir.1996) ("*Reider* is seriously flawed because it fails to recognize that the curtailment of a liberty interest is not the only way that the Constitution may be violated."), *rejected by Weaver, supra* (*Burkett* holding and analysis of *Reider* rejected by the Commonwealth Court).

Further, constitutional issues which permit review arise *only* if the applicable parole statute provides a prisoner with the expectation of release. *Weaver,* 688 A.2d at 773, *citing, Greenholtz v. Inmates of Nebraska Penal and Correctional Complex,* 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979). "No such expectation is created by the Pennsylva-

---

**3.** While appellant does not use the term *ex post facto,* he does cite the cases which center on the issue of whether a change in parole rules amount to an illegal *ex post facto* law.

nia parole statute, and therefore, there is no liberty interest affected by the Board's decision to deny parole." *Id.*; *King*, 534 A.2d at 151–153 (noting clear distinction between parole statutes which provide that the parole board "shall" release prisoners on parole when they meet the eligibility requirements, e.g., Nebraska's and Montana's parole statutes, and Pennsylvania's parole statute which merely authorizes, but does not require, the Board to release eligible inmates on parole). Since no constitutional liberty interest is involved here, we find that appellant cannot complain his parole was unconstitutionally denied. *Compare, Bronson v. Board of Probation and Parole*, 491 Pa. 549, 421 A.2d 1021 (1980), *cert. denied*, 450 U.S. 1050, 101 S.Ct. 1771, 68 L.Ed.2d 247 (1981) (appellate review of Board decisions is permitted upon *revocation* of parole, since such a defendant would have a "liberty interest" to protect following release).[4]

Since appellant has no constitutional right to parole in Pennsylvania, we reject his claim that his plea was involuntary because of changes in the Parole Board's rules which have allegedly increased his effective minimum sentence. Also, as previously stated, we reject appellant's invitation to increase the information of which the court must advise a defendant who is pleading guilty to include the rules of the Pennsylvania Board of Probation and Parole and/or his possibility

of parole upon expiration of his minimum period of incarceration.

Order affirmed.

**4.** Clearly, we agree with appellant's general assertion that laws affecting parole are within the ambit of the *ex post facto* clause. *See, Warden v. Marrero*, 417 U.S. 653, 663, 94 S.Ct. 2532, 2538, 41 L.Ed.2d 383 (1974); *Fender v. Thompson*, 883 F.2d 303, 306 (4th Cir.1989), *quoting Weaver v. Graham*, 450 U.S. 24, 33, 101 S.Ct. 960, 966, 67 L.Ed.2d 17 (1981) (*citing Dobbert v. Florida*, 432 U.S. 282, 293–294, 97 S.Ct. 2290, 2298–2299, 53 L.Ed.2d 344, 356–357 (1977)) (retrospective application of a statute modifying or revoking parole eligibility would for prisoners who were convicted prior to the change substantially alter the consequences attached to the crime, thereby, changing the "quantum of punishment"). However, as previously determined, appellant's constitutional claim is not recognized under Pennsylvania law which provides that the *granting of parole* is not a constitutionally protected right.

Nevertheless, we do note that under similar circumstances to those alleged herein, the Fourth Circuit of the Court of Appeal has held that a substantive change in the federal parole rules for youth offenders violated the *ex post facto* clause

of the United States Constitution. *See, Marshall v. Garrison*, 659 F.2d 440, 443–444 (4th Cir. 1981) (change in parole rules permitted Parole Commission to consider the severity of the defendant's crime violated *ex post facto* clause, where the severity of the crime was not a proper factor for parole consideration at the time of the offense); *but see, Alston v. Robinson*, 791 F.Supp. 569, 587–590 (D.Md.1992) (explaining the distinction between substantive parole release rule changes which violate the *ex post facto* clause and procedural changes which do not; rejecting claims similar to appellant's since the parole rule changes were procedural, not substantive, changes such that the *ex post facto* clause was not implicated).

Of course, as provided in *Weaver*, 688 A.2d at 772 n. 11 (collecting cases), courts of this Commonwealth are not required to follow federal courts on federal questions, let alone questions involving state law, absent a pronouncement by the United States Supreme Court, and we do not have a Supreme Court pronouncement on the issue raised herein.