Arthur HECKMAN, Petitioner,

v.

**PENNSYLVANIA BOARD OF PROBATION AND PAROLE, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Aug. 27, 1999.

Decided Jan. 13, 2000.

Teri B. Himebaugh, Schwenksville, for petitioner.

Robert A. Greevy, Harrisburg, for respondent.

Before COLINS, J., FRIEDMAN, J., and McCLOSKEY, Senior Judge.

COLINS, Judge.

Petitioner, Arthur Heckman,[1] petitions this Court to review a Pennsylvania Board of Probation and Parole (Board) decision denying his request for administrative relief. Petitioner contends the Board erred by revoking his parole for violation of two special parole conditions: one relating to

---

1. Heckman was sentenced in Berks County to an aggregate term of 6 years, 6 months to 17 years, 11 months for the offenses of Involuntary Sexual Deviate Intercourse, Corruption of Minors and Indecent Assault. He was released on parole on October 26, 1990.

failure to successfully complete the required outpatient sex-offender therapy and the second relating to no contact with any child under the age of 18 for any reason. Petitioner contends the record lacks substantial evidence to support the Board's finding that petitioner violated the above special conditions. We disagree with the assertions set forth by petitioner, and affirm the order of the Board.

■ This Court's scope of review of Board decisions is limited to determining whether necessary findings of fact are supported by substantial evidence, whether an error of law was committed, or whether petitioner's constitutional rights were violated. 2 Pa.C.S. § 704; *Zazo v. Pennsylvania Board of Probation and Parole*, 80 Pa.Cmwlth. 198, 470 A.2d 1135 (1984). Under Pennsylvania law, an offender has no right to a grant of parole; rather parole is a matter of legislative grace. *United States v. Frederick*, 405 F.2d 129 (3 rd Cir. 1968); *Rogers v. Pennsylvania Board of Probation and Parole*, 555 Pa. 285, 724 A.2d 319 (1999); *Reider v. Pennsylvania Board of Probation and Parole*, 100 Pa. Cmwlth. 333, 514 A.2d 967 (1986). Since an offender on parole is serving a sentence of imprisonment outside the prison walls, both the sentencing court and the parole board, have broad discretion to fashion appropriate conditions of parole since those conditions of parole are intended to effect the offender's rehabilitation and reintegration into society as a law-abiding citizen. *Reider*.

■ Petitioner contends the Board's order is not supported by substantial evidence. We disagree. Substantial evidence has been defined as such relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *McCauley v. Pennsylvania Board of Probation and Parole*, 98 Pa.Cmwlth. 28, 510 A.2d 877 (1986). Much discussion in the notes of testimony concerns the personal computer located at petitioner's residence,

and the fact that the "history" feature on the computer reveals that someone visited various internet "chat rooms." Without disregarding that evidence of record, it is incumbent upon the Court to look at that which is dispositive to resolution of the issues at hand. Dispositive herein is not petitioner's intent to do wrong, but whether petitioner violated a condition of parole. Here, the evidence is petitioner's own admission that he spoke "on-line" with a person under the age of 19.[2] The Board's parole conditions were explicit: contact with any person 18 or under was forbidden. That condition was violated, and proof of violation is petitioner's own admission. That admission is the requisite substantial evidence needed to support the Board's order.

■ The second issue is resolved in the same manner. The second condition of parole required petitioner to successfully complete a mandatory sex offender treatment program. The uncontested evidence of record is that petitioner was discharged from the treatment program. What petitioner attempts to challenge are the program and the manner in which it was administered. Petitioner also challenges the director and her reasons for discharging petitioner from the program. However, those issues are not for consideration. In this case the parole condition required petitioner to successfully complete a sex offender treatment program. The uncontested fact of record is that petitioner did not complete the program. Ms. Simmons, a psychotherapist involved in petitioner's treatment program testified as follows:

We believe that individuals who have a strong history of inappropriate sexual contact with children should not be around children. And Mr. Heckman, whether he had any sexual contact with children, was on many occasions around children, which he shouldn't have been, to the point where there were suspicions

---

**2.** Mr. Heckman testified as follows: "... You asked me have I had any contact with any- body under 18 and I said yes, a 17 year old." (Notes of Testimony, p. 50.)

about his behavior, regardless if [they] were unfounded or not

Notes of Testimony, pp. 10—11. In her report to the Court, Ms. Simmons wrote that "Mr. Heckman is being discharged from sexual offender treatment unsuccessful due to his reported possession and use of pornographic material in additional to his consistently deceptive behavior regarding his thoughts or behavior in relation to sexually inappropriate targets." Whether or not petitioner's alleged possession of pornographic material was proven by hearsay is of no moment, since his discharge from the program was not substantially based on the possession of such material. Thus we conclude that there was no error in the Board's conclusion that petitioner violated the conditions of his parole.

Accordingly, the order of the Pennsylvania Board of Probation and Parole is affirmed.

### O R D E R

AND NOW, this 13th day of January 2000, the order of the Pennsylvania Board of Probation and Parole in the above-captioned matter is affirmed.

FRIEDMAN, Judge, dissenting.

I respectfully dissent. First, I do not agree that the record contains substantial evidence to support the Pennsylvania Board of Probation and Parole's (Board) finding that Heckman violated a special condition of parole by having contact with a minor. Second, unlike the majority, I believe that the Board committed an error of law when it determined that Heckman's failure to complete a sex offender treatment program violated a special condition of his parole.[1] The Board's error was its failure to consider the reasons for Heckman's discharge from the program.[2]

### I. Contact With a Minor

The majority concludes that Heckman's admission that he spoke "on-line" with a person under the age of eighteen provides substantial evidence to support the Board's finding that Heckman violated a special condition of parole by having contact with a minor. (Majority op. at 372.) However, in reaching this conclusion, the majority fails to address the issue raised in Heckman's brief, i.e., whether the Board presented substantial evidence to establish Heckman's *intent* to have contact with a minor. (Heckman's brief at 7, 12–13.) Unlike the majority, I would address this issue.

As a reviewing court, we will not add the element of intent to a clearly stated parole condition. *Sigafoos v. Pennsylvania Board of Probation and Parole*, 94 Pa. Cmwlth. 454, 503 A.2d 1076 (1986). Thus, the question here is whether the Board's special condition clearly does *not* require intentional conduct. *Hawkins v. Pennsylvania Board of Probation and Parole*, 88 Pa.Cmwlth. 547, 490 A.2d 942 (1985). I do not believe that the special condition here clearly does not require intentional conduct; in fact, I believe that it clearly requires intentional conduct.

The record indicates that, when Heckman was released on parole in 1990, Heckman was subject to the following special conditions of parole:

> You must not contact or associate with victims of your offense—Heidi or Jeffery McCarty . . . .

> You are not to reside with any minor children while on parole—mandatory.

---

1. Heckman's parole papers state: "Mandatory out-patient sex offender treatment is a special condition of your parole supervision until the treatment source and/or parole supervision staff determine it is no longer necessary." (O.R. at 3, 5.)

2. The record indicates that Heckman received three years of sex offender treatment while in prison and seven and a half years of sex offender treatment after his release on parole. (O.R. at 90.) Thus, Heckman had been receiving sex offender treatment for more than ten years.

To have contact with your children, you must have permission of your agent. (O.R. at 5.) Thus, except for Heidi and Jeffery McCarty and his own children, there was *no* special condition prohibiting contact with minors. (O.R. at 3, 5.)

In 1996, the Board received reports that Heckman was having contact with minors. (O.R. at 7.) As indicated above, such conduct did not violate any condition of Heckman's parole. Indeed, Heckman openly admitted that he had taken two boys fishing. (O.R. at 7.) For whatever reason, on June 12, 1996, the Board amended the special conditions of Heckman's parole to include the following: "Must not have contact with any child under the age of eighteen, for any reason." [3] (O.R. at 12.)

In 1997, Heckman went to the local swimming pool, took some photographs and allegedly followed a female teenage lifeguard home. (O.R. at 8.) Heckman acknowledged taking pictures at the pool, but he denied any inappropriate behavior. (O.R. at 8.) The Board took no action. Evidently, the Board believed that taking photographs of minors did not constitute "contact" with minors.

In the context here, the word "contact" means a "touching" or an "association or relationship." *Webster's Third New International Dictionary* 490 (1993). Thus, the special condition imposed in 1996 prohibits Heckman from physically touching a minor or establishing a relationship with a minor. As for the physical touching of a minor, I cannot believe that Heckman violates this special condition when he accidentally brushes against a person under the age of eighteen while moving through a crowd of people. As for establishing an association or relationship with a minor, I believe that it is impossible to have an association or relationship with someone without intending to do so. Thus, I conclude that the special condition of parole here requires

that the parolee *intend* to associate with a minor.

Here, Heckman's admission that he spoke "on-line" with a minor does not constitute substantial evidence to support a finding that Heckman intended to associate with a minor. When Heckman spoke "on-line" with a minor, Heckman intended only to associate with a "ham radio" enthusiast, (O.R. at 63–64), and Heckman ended all communication as soon as Heckman realized that the "ham radio" enthusiast was a minor, (O.R. at 65). Because the record establishes that Heckman did not intend to have contact with a minor, I do not believe that the record contains substantial evidence to support the Board's finding of a parole violation. Accordingly, I would reverse with respect to the first parole violation.

## II. Treatment Program

Next, the majority states that: "The uncontested evidence of record is that [Heckman] was discharged from the [sex offender] treatment program. What [Heckman] attempts to challenge are ... [the] reasons for discharging [him] from the program. However, those issues are not for consideration." (Majority op. at 372.) In other words, the majority holds that, when the Board makes sex offender treatment a special condition of parole and the treatment provider decides to discontinue that treatment, the Board may revoke parole without considering the treatment provider's reasons for discontinuing treatment. I disagree with such a holding.

### A. Duty to Ensure Treatment

Section 1 of the act commonly known as the Parole Act (Parole Act), Act of August 6, 1941, P.L. 861, *as amended,* 61 P.S. § 331.1 (emphasis added), states that the Board shall "assist in the fair administration of justice by ensuring the custody, control and *treatment* of paroled offenders." [4] The Board violates its duty to pro-

---

3. The amendment further stated that it would be the responsibility of the parole agent to help Heckman interpret this special condition of parole. (O.R. at 12.)

4. The word "ensure" means "to make sure [or] certain" or to "guarantee." *Webster's Third New International Dictionary* 756 (1993).

vide treatment to parolees when it terminates treatment arbitrarily. That is what the Board did here.[5]

There is no question that Heckman failed to complete the sex offender treatment program. However, because the Board has a responsibility under the Parole Act to *ensure* the treatment of parolees, once the Board commits a parolee to a treatment program that specifically addresses his illegal behavior, there must be good cause for his removal from treatment. Of course, in this case, it was the program, not the Board, that initially decided to end Heckman's treatment. Yet, ultimately, it was for that reason that the Board determined that Heckman violated a special condition of parole and recommitted him. By revoking Heckman's parole without considering the program's reasons for discharging Heckman and without considering another treatment program for Heckman, the Board acted in an arbitrary manner.

## B. Best Interests of the Parolee

Moreover, section 21 of the Parole Act, 61 P.S. § 331.21, states that, in making parole decisions, the Board must consider whether "the best interests of the convict justify or require his being paroled" and whether "the interests of the Common-wealth will be injured thereby." The Board is not considering the best interests of the parolee or the interests of this Commonwealth when the Board fails to consider evidence that a treatment provider arbitrarily discontinued the treatment of a parolee. Indeed, both the parolee and this Commonwealth have an interest in the parolee's rehabilitation through proper treatment.

## C. The Parole Decision

We must also be mindful that section 21 of the Parole Act grants the power to parole to the Board, *not* to treatment providers. Yet, when the Board revokes parole based solely on a treatment provider's decision to discontinue treating a parolee without investigating that decision, the Board has impermissibly delegated its parole power to the treatment provider.[6] In this case, the treatment provider, not the Board, decided whether Heckman met the criteria for parole despite the Legislature's clear intention that the Board alone possesses this power.[7] In the Parole Act, the Legislature requires that, in deciding whether to parole a prisoner, the Board must consider recommendations or reports from the trial judge, the prosecutor, prison

---

**5.** Instead of performing its statutory duty, the Board suggests in its decision that parolees initiate malpractice or negligence lawsuits against the various treatment programs that exist throughout the state. (*See* O.R. at 120.) The Board apparently believes that the courts of this Commonwealth can adequately compensate a parolee for damages whenever the Board revokes parole based on the arbitrary decision of a mental health professional. The majority does not comment on the Board's call for prisoner litigation against treatment programs. By its silence, the majority implicitly agrees that prisoners discharged from treatment programs without reason should sue the treatment providers if the Board revokes parole as a result of the discharge. I would prefer that the Board perform its statutory duty under section 1 of the Parole Act and ensure that treatment is not arbitrarily withdrawn from parolees.

**6.** This court has pointed out that: "The General Assembly has mandated that the Board acquire specialized knowledge and expertise to assist it in making decisions whether or not to release prisoners on parole." *Johnson v. Pennsylvania Board of Probation and Parole*, 110 Pa.Cmwlth. 142, 532 A.2d 50, 53 (1987).

**7.** The identity of the person, or persons, who decided to end Heckman's treatment is not in the record before us. The letter to the Board regarding Heckman's discharge is from Molly Simmons, M.S., a psychotherapist. The letterhead of the Simmons letter contains the name of the treatment provider's Medical Director, James Arndt, M.D., Psychiatrist. However, the letter does *not* state that Dr. Arndt was involved in deciding to terminate Heckman's treatment. (O.R. at 93–94.)

officials, victims or victim families.[8] The Legislature did *not* include the treatment provider among those persons whose views are to be considered.

### D. The Reasons

Although the majority holds that the reasons for Heckman's discharge are not for consideration, the majority briefly discusses the reasons. (Majority op. at 372–73.) In its discussion, the majority states that Heckman's discharge from the program "was not substantially based on the possession of [pornographic] material." [9] (Majority op. at 373.) I cannot agree.

First, because the Board did not consider the reasons for Heckman's discharge from the program, the Board made no findings of fact as to those reasons. Because there are no findings relative to the reasons for Heckman's discharge, the majority's statement has no basis in fact. Indeed, by making the above statement, the majority has usurped the Board's authority as fact finder.

Second, it is clear from the record that the Hearing Examiner believed that Heckman's alleged possession of pornographic materials was the *only* reason for his discharge from the program.

[Hearing Examiner]: Okay, the only question I'm going to ask here: Is it my understanding (and I'm looking at this report) that the reason for discharge was in fact the possession and use of pornographic material.

[Parole Agent]: That's correct.

. . . .

[Hearing Examiner]: I think the basis of the discharge, unless I'm wrong, was based upon the possession of pornographic material.

[Parole Agent]: That would be correct. And I agree—[the other issues discussed in the discharge report are] aggravating factors—. . . views that they had [about Heckman].

(*See* O.R. at 69–70.) Thus, the majority's "finding" is in direct conflict with the Hearing Examiner's "finding."

Third, the majority's statement that Heckman was not discharged from the program because he possessed pornography allows the majority to ignore the fact that the only evidence to support Heckman's possession of pornography is hearsay. (O.R. at 35.) Indeed, the majority states that the lack of competent evidence in the record to support Heckman's possession of pornography is "of no moment."

---

8. Sections 18, 19 and 20 of the Parole Act, 61 P.S. §§ 331.18, 331.19 and 331.20.

9. The majority suggests that the real reason for Heckman's discharge from the treatment program was his "deceptive behavior regarding his thoughts and behavior in relation to sexually inappropriate targets." (Majority op. at 373.) To support this "finding," the majority quotes the testimony of a psychotherapist involved in Heckman's treatment program, which indicates that Heckman was around children on many occasions and that Heckman should not have been around children. (Majority op. at 372–73.) However, the psychotherapist did not explain why Heckman was only discharged from the program in 1998 when Heckman had been around children for years.

The record indicates that: (1) Heckman entered this particular treatment program in

1995, (O.R. at 93); (2) Heckman's parole did *not* prohibit his contact with minors, (O.R. at 3, 5, 7); (3) there were reports that Heckman was having contact with minors in 1996, (O.R. at 7); (4) Heckman admitted that he took two boys fishing in 1996, (O.R. at 7); and (5) as of June 12, 1996, Heckman was prohibited from having contact with minors (O.R. at 12).

In other words, although the program did not believe that Heckman should be around children, the program did *not* end Heckman's treatment when he was around children in 1996. The psychotherapist did not indicate whether Heckman was permitted to remain in the program in 1996 because Heckman openly acknowledged his contact with children. The psychotherapist also did not indicate whether Heckman could have remained in the program in 1998 if he had confessed to every thought he had and every action he took regarding minors.

(Majority op. at 373.) However, if the program terminated Heckman's treatment because he possessed pornography, and the truth is that Heckman did *not* possess pornography, then the Board put Heckman back in prison for no reason. I do not consider such an unjust result to be "of no moment." I do not believe that justice will tolerate the deprivation of anyone's liberty because of a mistake.

In conclusion, because I believe that the Board erred as a matter of law by failing to consider the reasons for Heckman's discharge from the sex offender treatment program, I would vacate the Board's order and remand this case to the Board for findings and conclusions relating to those reasons.